**Sheldon ABISH, et al., Appellees,**

v.

**NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WIS., Appellant.**

**No. 703, Docket 90–7668.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 20, 1990.

Decided Jan. 23, 1991.

Iris S. Richman (Richard L. Gold, and Sylvor, Schneer, Gold & Morelli, New York City, N.Y., on brief), for appellees Abish, Bard, Katz and Rudes Investors.

Douglas M. Robison, and Page & Addison, John T. Palter, and Geary, Stahl & Spencer, Dallas, Tex., submitted a brief, on behalf of appellees Breese Investors.

H. Adam Prussin (Dennis J. Block, Timothy B. Parlin, and Weil, Gotshal & Manges, New York City, on brief), for appellant Northwestern Nat. Ins. Co. of Milwaukee, Wis.

Before TIMBERS, MESKILL and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Northwestern National Insurance Company of Milwaukee, Wisconsin (Northwestern) appeals from an order entered July 11, 1990 in the Southern District of New York, Leonard B. Sand, *District Judge*, denying its motion for *quia timet* and exoneration relief. *In re Gas Reclamation, Inc. Sec. Litig.*, 741 F.Supp. 1094 (S.D.N.Y.1990).

On appeal, Northwestern contends that the district court erred in denying it *quia timet* and exoneration relief—forms of equitable relief said to be traditionally available to sureties. It contends that, having satisfied the requisite elements for those forms of relief as against the principals, appellees Abish, Bard, Katz, Rudes, and Breese Investors (collectively appellees or investors), it was entitled to enforcement as a matter of law. In raising this claim of error on appeal, Northwestern contends that we may exercise appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1292(a)(1) (1988). On the other hand, the investors contend that the district court properly denied appellant's motion for *quia timet* and exoneration relief. The investors filed a separate motion to dismiss this appeal, contending that we lack appellate jurisdiction.

For the reasons which follow, we hold that we do not have appellate jurisdiction. Accordingly, we dismiss the appeal. In light of our holding, we express no views on the merits of Northwestern's claims.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

This appeal represents another chapter in a continuing saga emanating from the investors' purchase of Gas Reclamation Units (units) from Gas Reclamation, Inc. (GRI). For the purposes of this appeal, we assume familiarity with facts previously stated in various published decisions. *In re Gas Reclamation, Inc. Sec. Litig.*, 733 F.Supp. 713 (S.D.N.Y.1990); *In re Gas Reclamation, Inc. Sec. Litig.*, [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,731 (S.D.N.Y. April 29, 1988); *In re Gas Reclamation, Inc. Sec. Litig.*, 659 F.Supp. 493 (S.D.N.Y.1987).

The investors purchased units from GRI pursuant to a private placement memorandum dated April 12, 1984. To finance their purchase of the units, the investors executed promissory notes (notes). The notes were payable to or eventually acquired by Connecticut National Bank, Ensign Bank FSB, Morris County Savings Bank, and Privatbanken A/S (collectively, the banks). Each note required quarterly payments of interest and principal over a term of approximately four and one-half years. Interest on the notes was calculated at a specified percentage over the prime rate.

As a condition to the execution of the notes, the investors contracted with Northwestern to act as surety. Northwestern issued surety bonds which guaranteed payment of principal and interest to the banks in the event of a default by the investors. Northwestern and the investors also executed an indemnification agreement whereby the investors promised to reimburse Northwestern for any damages it might incur under the surety bonds.

GRI ceased operations and subsequently filed for bankruptcy in February 1985. Having not received any income from their investments, virtually all of the investors defaulted on the notes. After the investors defaulted, the banks demanded payment from Northwestern pursuant to the surety bonds. Northwestern made payments on the notes from early 1985 until October 1987. In October 1987, Northwestern discontinued payment on the notes in response to the district court's denial of motions to dismiss the investors' complaint brought by various parties to the action.

Individual investors began commencing actions as early as March 1985. Pursuant to an order of the Judicial Panel on Multidistrict Litigation, this case, which consists of at least ten separate actions, was consolidated and transferred to the Southern District of New York for the resolution of pre-trial matters. The consolidated complaint alleged numerous security law violations and other claims against the banks and Northwestern. In response, Northwestern and the banks asserted counterclaims against the investors. The banks also asserted claims against Northwestern as guarantor pursuant to the surety bonds. In an opinion dated April 9, 1987, the district court denied a motion to dismiss the consolidated complaint brought by numerous parties including Northwestern and the banks. *In re Gas Reclamation, Inc. Sec. Litig., supra,* 659 F.Supp. 493. After completion of discovery, the banks and investors discontinued their claims against each other.

On February 28, 1990, the banks moved for summary judgment against Northwestern as surety for all amounts owed by the investors under the note agreement. On March 18, 1990, in response to the banks' motion for summary judgment, Northwestern filed a motion in the district court for an order compelling the investors, as the parties primarily liable, to pay all amounts due and owing under the promissory notes held by the banks. In the alternative, Northwestern claimed that the court should order the investors to pay money into the court as security. In requesting this relief, Northwestern sought to enforce its equitable rights of *quia timet* and exoneration.

In an opinion dated July 11, 1990, the district court denied appellant's motion for *quia timet* and exoneration relief. *In re Gas Reclamation, Inc. Sec. Litig., supra,* 741 F.Supp. 1094. The court began its analysis by recognizing the existence and nature of these equitable rights:

"Exoneration is the equitable right of a surety to compel its principal to pay his or her debt and thereby discharge the surety's obligation under its bond. *See Filner v. Shapiro,* 633 F.2d 139, 142 (2d Cir.1980); *Admiral Oriental Line v. United States,* 86 F.2d 201, 204 (2d Cir. 1936) ("In equity, ... before paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obligated to make inroads into his own resources when the loss must in the end fall upon the principal.") (citations omitted); *Restatement of Security* § 112 (1941). *Quia timet* is the right of the surety to compel its principal to place the surety 'in funds' sufficient to prevent

anticipated future losses, where a surety has reasonable grounds to believe that its principal will not perform his obligations ...."

*Id.* at 1104. While the court stated that these claims exist independent of the surety's right to indemnification, it declined to separate the investors' claims against Northwestern from Northwestern's claims for exoneration and *quia timet* relief. The court surmised that, if the investors succeed at trial on their claims, all of which have survived Northwestern's motion to dismiss and motion for summary judgment, then they would have a right to offset those claims against the relief that Northwestern sought.

Having concluded in a prior summary judgment that the investors had no defense to the payment of the notes, the question for the court became who should bear the burden of advancing funds during the pendency of the litigation between Northwestern and the investors. Initially, the court emphasized that the banks are "clearly entitled" to seek payment from Northwestern instead of the investors. Without citing relevant case law, the court concluded that "equitable considerations require Northwestern to make the required payments to the banks and wait until the conclusion of trial for reimbursement, if any, from the investors." *Id.* at 1105–06.

In denying Northwestern's motion for *quia timet* and exoneration relief, the court distinguished three district court cases where Northwestern successfully sought to enforce its rights of *quia timet* and exoneration pursuant to a motion for a preliminary injunction. *Northwestern Nat'l Ins. Co. v. Alberts,* 741 F.Supp. 424 (S.D.N.Y.1990) (appeal pending); *Wingsco Energy One v. Vanguard Groups Resources 1984, Inc.,* No. 86–452 (S.D.Tex. Nov. 15, 1989); *Northwestern Nat. Ins. Co. v. Barney,* No. 86–3936 (N.D.Ohio Nov. 18, 1988). The court held that in those cases, where the standards for issuance of a preliminary injunction were applied, each district court concluded that Northwestern was likely to succeed on the merits. By contrast, in considering the claims before it in the instant case, the court concluded that

"the investors have made a more significant showing of the merits of their claims against Northwestern." *In re Gas Reclamation, Inc. Sec. Litig., supra,* 741 F.Supp. at 1106.

On appeal, Northwestern contends that the district court erred in denying its motion for *quia timet* and exoneration relief. In response, the investors contend that the district court properly denied the requested relief. The investors also move to dismiss this appeal for lack of appellate jurisdiction.

II.

■ As a threshold matter, we turn to the investors' contention that we lack appellate jurisdiction. In its notice of appeal, Northwestern denominated "28 U.S.C. § 1291 and/or § 1292" as the basis for appellate jurisdiction.

(A)

We first address Northwestern's contention that appellate jurisdiction is founded upon 28 U.S.C. § 1291. Although § 1291 is alluded to in Northwestern's notice of appeal, its memorandum in opposition to appellees' motion to dismiss conspicuously omits any further reference to § 1291 as a basis for appellate jurisdiction. In any event, we need not tarry long with this asserted basis for appellate jurisdiction. Clearly the district court's order does not constitute a "final decision" within the meaning of § 1291. *Catlin v. United States,* 324 U.S. 229, 233 (1945) ("[a] 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment"). Neither does the order deny rights which are "completely separate" from the merits of the action so as to satisfy the requirements of the collateral order doctrine. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468 (1978).

We hold that the district court order is not appealable pursuant to 28 U.S.C. § 1291.

### (B)

■ Northwestern further contends that we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). Specifically, Northwestern contends that its request for *quia timet* and exoneration relief in effect was a request for an injunction as defined under § 1292(a)(1). Further, Northwestern contends that it sought an injunction from the district court as "an alternative mechanism of enforcement of its rights." We disagree with Northwestern's contention that its claims for equitable relief below satisfy the definition of an injunction for the purposes of § 1292(a)(1). Similarly, we reject Northwestern's suggestion that it actually sought an injunction as an alternate form of relief in the district court.

In disposing of Northwestern's latter contention first, we look to Northwestern's memorandum in support of its motion for *quia timet* and exoneration relief before the district court. Northwestern specifically stated that "[its] present motion does not seek a preliminary injunction; therefore, the special requirements for such relief need not be met here." The district court was not asked to grant injunctive relief nor did the court construe Northwestern's motion as one for a preliminary injunction. Indeed, in denying the motion for *quia timet* and exoneration relief, the district court distinguished those cases where Northwestern requested a preliminary injunction to enforce its equitable rights. *In re Gas Reclamation, Inc. Sec. Litig., supra,* 741 F.Supp. at 1106. Northwestern's fleeting reference to other decisions which have granted *quia timet* and exoneration relief pursuant to a preliminary injunction cannot be characterized seriously as a request for alternate relief.

We are not persuaded by Northwestern's argument, coming this late in the day, that it sought a preliminary injunction as an alternate form of relief from the district court. Indeed, this *post hoc* contention is apparently little more than a ruse to establish appellate jurisdiction. Realizing that it could not satisfy the standards for issuance of a preliminary injunction in the district court, Northwestern, aided by experienced counsel, expressly sought an order pursuant to the district court's general equity powers. On appeal, Northwestern resurrects this theory, which it apparently strategically rejected below, solely to serve as a predicate for appellate jurisdiction. We have held on prior occasions that, where a party has failed to press a claim below, it will be precluded from doing so for the first time on appeal. *E.g., Fleming v. New York Univ.,* 865 F.2d 478, 481 (2 Cir.1989) (argument that was not made below is "precluded" on appeal); *Grace Towers Tenants Assoc. v. Grace Housing Dev. Fund Co.,* 538 F.2d 491, 495 (2 Cir.1976) ("[b]y failing to urge this claim below, plaintiff may be held to have waived it").

Accordingly, we reject Northwestern's contention that it sought preliminary injunctive relief below. We hold that Northwestern sought relief from the district court based solely on its general equitable powers.

### (C)

This brings us to Northwestern's claim that, "even if the district court's order is viewed as deriving solely from its inherent equitable powers, the mandatory equitable relief requested here constitutes an injunction for the purposes of § 1292(a)(1)." Northwestern relies on *Korea Shipping Corp. v. New York Shipping Ass'n,* 811 F.2d 124, 126 (2 Cir.1987), where we acknowledged that certain orders entered pursuant to the district court's equity powers have the "practical effect" of a preliminary injunction. While we agree that the order sought in the instant case would have the effect of a preliminary injunction, Northwestern fails to satisfy the remaining requirement for appealability articulated in *Korea Shipping.*

Section 1292(a)(1) provides that a party may appeal from "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions ...." Although there is a dearth of legislative history relating to the enactment of § 1292(a)(1), it appears that Congress recognized a need to " 'permit[ ]

litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.'" *Carson v. American Brands, Inc.,* 450 U.S. 79, 84 (1981) (quoting *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181 (1955)). While Congress presumably acted with this goal in mind, caution should be exercised in interpreting this exception to the final judgment rule. "Unlike some state procedures, federal law expresses the policy against piecemeal appeals. Hence we approach this statute somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders." *Switzerland Cheese Assoc., Inc. v. E. Horne's Mkt., Inc.,* 385 U.S. 23, 24 (1966) (citation omitted). Cognizant of these interests, the Supreme Court has held that "[u]nless a litigant can show that an interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." *Carson, supra,* 450 U.S. at 84 (citation omitted).

Consistent with the Court's holding in *Carson,* we have articulated what types of orders are appealable injunctions for the purposes of § 1292(a)(1). *Korea Shipping, supra,* 811 F.2d at 126. We first acknowledged the generic proposition advanced by courts and commentators that "an order directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint" is a preliminary injunction for the purposes of § 1292(a)(1). *Id.* (citing *United States v. Western Elec. Co.,* 777 F.2d 23, 28 n. 12 (D.C.Cir.1985)); *see also Cohen v. Board of Trustees of Univ. of Medicine and Dentistry,* 867 F.2d 1455, 1465 n. 9 (3 Cir.1989) (in banc); *I.A.M. Nat'l Pension Fund v. Cooper Indus., Inc.,* 789 F.2d 21, 24 (D.C.Cir.1986); 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure § 3922 (1977). We concluded, however, that the "proffered definition is incomplete". *Korea Shipping, supra,* 811 F.2d at 126. In order to satisfy the definition of "preliminary injunction" within the meaning of § 1292(a)(1), the appealing party must also demonstrate that it faces "'serious, perhaps irreparable, consequences'". *Id.* (quoting *Carson, supra,* 450 U.S. at 84).

Although *Korea Shipping* attached considerable significance to the fact that the party was seeking, in effect, an injunction pursuant to statutory authorization, we conclude that the principles articulated are equally applicable to a case where the district court acts pursuant to its equity powers. To be sure that no such statutory limitation was intended, we need only point to a recent decision of the Supreme Court which abolished the antiquated legal-equitable distinction governing the appealability of stays under § 1292(a)(1) and reaffirmed the principle that "orders that have the practical effect of granting or denying injunctions and have '"serious, perhaps irreparable, consequence,"'" are appealable. *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 287–88 (1988) (citations omitted).

Applying to the instant case the principles formulated in decisions of the Supreme Court and most recently by our court in *Korea Shipping,* we fail to see how an order denying *quia timet* and exoneration relief will cause serious or irreparable consequences. Northwestern contends that irreparable harm will ensue since it will be deprived permanently of its equitable rights of *quia timet* and exoneration.

In determining whether irreparable harm exists, the critical inquiry is not whether the surety's rights are lost, but whether the loss of those rights will cause serious or irreparable harm. Behind Northwestern's claim for *quia timet* and exoneration relief, it is evident that both rights merely contemplate money payments during the pendency of the action. The nature of the relief sought being monetary compensation, there is no reason why Northwestern cannot be made whole upon resolution of the merits. We have often held that "irreparable injury means injury for which a monetary award cannot be adequate compensation". *Jackson Dairy, Inc. v. H.P.*

454

*Hood & Sons, Inc.*, 596 F.2d 70, 72 (2 Cir.1979) (per curiam); *see also JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2 Cir.1990); *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2 Cir.1989); *Sperry Intern. Trade, Inc. v. Government of Israel*, 670 F.2d 8, 12 (2 Cir.1982). In a few instances, however, we have recognized exceptions to this general rule and found irreparable harm where a party sought only money damages. *E.g., Tucker, supra*, 888 F.2d at 975 (monetary award post-judgment would be insufficient to prevent plaintiff's insolvency); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2 Cir.1985) (threat of extra-jurisdictional transfer or dissipation of assets); *see also United States v. First Nat'l City Bank*, 379 U.S. 378, 385 (1965) (same).

None of those exceptions is present here. Northwestern does not contend that it would be rendered insolvent or that investor funds may be transferred or dissipated in any manner. In short, Northwestern's only complaint seems to be that it was compelled to honor the surety agreement. Northwestern's claim of irreparable harm is belied further by the fact that it first raised its claim for *quia timet* and exoneration relief nearly four years after the investors first defaulted. It strains credulity to assert that Northwestern will sustain irreparable consequences after standing mute for so long. Since Northwestern can be made whole by money damages upon resolution of the merits, it will not sustain irreparable consequences as a result of denial of its motion for *quia timet* and exoneration relief.

We hold that the district court's order is not an appealable preliminary injunction for the purposes of § 1292(a)(1).

### III.

To summarize:

We hold that the district court's order denying Northwestern's motion for *quia timet* and exoneration relief is not appealable pursuant to either 28 U.S.C. § 1291 or § 1292(a)(1). Northwestern appeals from neither a final decision nor an appealable collateral order under 28 U.S.C. § 1291.

Moreover, the district court order is not an appealable preliminary injunction pursuant to § 1292(a)(1) since Northwestern fails to demonstrate that it will sustain serious or irreparable consequences. In light of our holding, we express no view on the merits.

Appeal dismissed. Costs to appellees.