934 F.2d 30
 George S. BOREY, et al., Plaintiffs,
Lewis Lanese, et al., Plaintiffs-Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PENNSYLVANIA, et al., Defendants,
Reliance Insurance Company, Defendant-Appellee.
Norman M. BRUCE, et al., Plaintiffs,
A. Burton White, et al., Plaintiffs-Appellants,
v.
Thomas A. MARTIN, et al., Defendants,
Reliance Insurance Company, Defendant-Appellee.
 Nos. 1325, 1326, Docket 90-9093, 90-9111.
 United States Court of Appeals,
Second Circuit.
 Argued March 25, 1991.
Decided May 29, 1991.
 
 Philip Fertik, Chicago, Ill. (Marilyn Neiman, Patricia C. Hayashi, Beigel & Sandler, New York City, of counsel), for plaintiffs-appellants.
 William R. Mait, New York City (Robert R. Wang, Mait, Wang & Simmons, Brown & Wood, New York City, of counsel), for defendant-appellee.
 Before OAKES, Chief Judge, KEARSE and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Plaintiffs-appellants ("the Investors" or "the principals") appeal from an order granting a preliminary injunction to defendant-appellee, Reliance Insurance Company ("Reliance" or "the surety"), which required the Investors to pay into the court their respective shares of unpaid installments on certain promissory notes pending the outcome of the litigation. Judge Sweet granted the preliminary injunction in order to enforce the surety's rights of quia timet and exoneration.
 
 BACKGROUND
 
 2
 Plaintiffs in these consolidated actions are groups of investors who, as limited partners in the defendant limited partnerships, executed promissory notes to these limited partnerships. The notes were then assigned to certain banks, which demanded financial guarantees before they would buy the notes. To that end, the Investors persuaded defendant Reliance to act as surety. Before agreeing to become a surety, however, Reliance required the Investors to execute indemnification agreements, agreeing to hold Reliance harmless in case of a default on the notes. After the execution of these indemnification agreements, Reliance issued financial guarantee bonds in favor of the limited partnerships, as obligees, and the banks, as assignees of the notes.
 
 
 3
 In September, 1987, the Investors began to default on their notes. The banks then called upon Reliance to cover the Investors' defaults. Reliance, as surety, was required to pay more than $3.6 million to the lending institutions, as creditors. The Investors claimed that their obligations were void because they had been fraudulently induced to invest in the limited partnerships. The Investors then brought suit, asserting securities fraud and common law fraud on the part of the general partners and Reliance. Their consolidated complaint sought, inter alia, a declaratory judgment that they were not liable under either the notes or the indemnification agreements.
 
 
 4
 Reliance answered the complaints and counterclaimed against the Investors for the sums it had already paid out as surety for the Investors. Reliance then moved for judgment on the pleadings. Judge Sweet denied this motion, holding that the Investors had sufficiently pleaded a claim for fraud on the part of Reliance. Faced with the prospect of growing liability because of the Investors' continued defaults, Reliance moved, in October, 1990, for a preliminary injunction to enforce its rights of quia timet and exoneration.
 
 
 5
 In granting the preliminary injunction, Judge Sweet relied on his prior decision in Northwestern Nat'l Insurance Co. v. Alberts, 741 F.Supp. 424 (S.D.N.Y.1990) (appeal pending). He found the present case indistinguishable from Alberts, where he had also granted a preliminary injunction to enforce the surety's rights to quia timet and exoneration. In Alberts, Judge Sweet considered the merits of the request for quia timet and exoneration relief as being separate and apart from the underlying fraud claims. He determined that the surety was likely to succeed on the merits of the preliminary injunction motion, and that, absent a preliminary injunction, the surety would suffer irreparable harm because it would be obligated to pay the creditor and thus would forever lose its rights to quia timet and exoneration. Judge Sweet held that the very loss of those rights, in and of itself, would cause irreparable harm. Id. at 431.
 
 DISCUSSION
 Quia Timet and Exoneration
 
 6
 Quia timet is the right of a surety to demand that the principal place the surety "in funds" when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor. See New Orleans v. Gaines's Adm'r., 131 U.S. 191, 212, 9 S.Ct. 745, 752, 33 L.Ed. 99 (1889); Morley Constr. Co. v. Maryland Casualty Co., 90 F.2d 976, 977-78 (8th Cir.), cert. denied, 302 U.S. 748, 58 S.Ct. 266, 82 L.Ed. 578 (1937). Exoneration, though closely related, is distinct. It is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor. See Filner v. Shapiro, 633 F.2d 139, 142 (2d Cir.1980); 74 Am Jur.2d Suretyship Sec. 174, at 122 (1974); Restatement of Security Sec. 112 (1941).
 
 
 7
 Historically, a bill quia timet was the procedural device by which a court of equity would exercise its jurisdiction "to protect a party against the occurrence of some future injury which he fears he may suffer, and which he cannot avoid by a present action at law." Mann & Jennings, Quia Timet: A Remedy for the Fearful Surety, 20 Forum 685, 686 (1985); see 4 Pomeroy's Equity Jurisprudence Secs. 1393-94, at 1021-22 (5th ed.1941). Quia timet is the applicable remedy available to the surety before the principal's debt is mature when it becomes likely that the principal will default on his obligation; exoneration is the proper remedy once liability has matured and the principal has defaulted on his debt to the creditor.
 
 
 8
 Quia timet and exoneration contain common substantive elements. Specifically, the surety must establish that the debt is presently due (exoneration) or will come due (quia timet ), that the principal is or will be liable for the debt, and, that absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor. See Admiral Oriental Line v. United States, 86 F.2d 201, 204 (2d Cir.1936). In Admiral Oriental, Judge Learned Hand stated that "before paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal." Id. (emphasis added); see Filner, 633 F.2d at 142 ("[t]he existence of the principal's duty to pay gives a surety the equitable right to call upon the principal to exonerate him from liability by discharging the debt when it becomes due").
 
 
 9
 Because quia timet and exoneration arise from a common substantive nucleus, they share common, though analytically distinct, defenses. When, for example, the principal has a defense against the surety, but not against the creditor, the surety may not maintain an action for quia timet or exoneration relief. As the Restatement of Security puts it: "Where the suretyship exists, it is the duty of the principal to the surety to satisfy the surety's obligation by performing his own duty to the creditor, in the absence of a defense between himself and the surety...." Restatement of Security Sec. 103 (1941). On the other hand, fraud on the part of the creditor gives the principal a defense to the primary obligation, and this defense may also be asserted by the surety. Because the surety may avoid liability by asserting this defense, he has no right to quia timet or exoneration. See L. Simpson, Suretyship Sec. 46, at 201; Restatement of Security Sec. 112 comment d (1941); see also Restatement of Security Sec. 118 (1941) (surety not entitled to equitable relief against principal if surety undertook its obligation with knowledge of the fraud by the creditor).
 
 
 10
 In the present case, plaintiffs, the principals, alleged fraud on the part of both the limited partnerships (the original creditors who subsequently assigned the notes) and the surety. These allegations, if true, would bar the surety from seeking quia timet or exoneration relief. The district court never reached the merits of the principals' fraud claims, a prerequisite to a finding of the surety's entitlement to quia timet and exoneration. And yet, the court granted the surety's application for a "preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) to enforce its rights of exoneration and quia timet...." This automatic linkage of preliminary relief (preliminary injunction) with final relief (quia timet and exoneration) was erroneous.
 
 Preliminary Injunction
 
 11
 As already noted, quia timet and exoneration are final remedies which require a determination on their merits before a court may either grant or deny such relief. There are occasions when the situation is deteriorating during the lawsuit and it becomes increasingly likely that if the surety prevails on its claims for equitable relief, it will win a Pyrrhic victory because by that time the principal will be unable to provide the funds that will furnish the quia timet or exoneration relief. In these extraordinary cases, the surety may seek a preliminary injunction to maintain the status quo during the trial of the basic action. See Glades County v. Detroit Fidelity and Surety Co., 57 F.2d 449, 452 (5th Cir.1932) (preliminary injunction not warranted to enforce surety's rights unless principal is either insolvent or secreting assets); L. Simpson, Suretyship Sec. 46, at 200 (same). No such situation was presented to the district court.
 
 
 12
 A preliminary injunction grants the plaintiff a measure of his final relief in advance of proving that he is entitled to final relief. The remedy is drastic, although we will not disturb a district court's decision to grant such an injunction unless it is an abuse of discretion, see Reuters Ltd. v. United Press International, Inc., 903 F.2d 904, 907 (2d Cir.1990), or rests on an error of law. See Stormy Clime Ltd. v. Progroup, Inc., 809 F.2d 971, 974 (2d Cir.1987) (abuse of discretion and error of law are distinct but equally valid grounds for reversal of district court's preliminary injunction ruling). Reversal is in order where the district court's ruling is predicated on an error of law because, by definition, the injunction "would plainly result from an improvident exercise of the trial court's discretion." See Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 316 (2d Cir.1982).
 
 
 13
 We have noted more than once that " '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.' " Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir.1983) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2948, at 431 (1973) (footnote omitted)). An applicant for a preliminary injunction "must show that it is likely to suffer irreparable harm if equitable relief is denied." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir.1990) (emphasis in original). Thus, a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction.
 
 
 14
 Monetary loss alone will generally not amount to irreparable harm. "A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir.1989). Such evidence might include, for example, proof that the monetary loss will probably force the party into bankruptcy. See Doran v. Salem Inn, Inc., 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975); Tucker Anthony Realty, 888 F.2d at 975. In such a situation, there is more than the risk of mere monetary loss. But, when a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979).
 
 
 15
 Here, the district court, relying on its reasoning in Alberts, supra, held that irreparable harm could be found because the surety would forever lose its rights to quia timet and exoneration. Alberts, 741 F.Supp. at 431 ("Therefore, the loss of the rights, not the potential financial loss, constitutes the irreparable harm.").
 
 
 16
 Even if the surety would "forever" lose these rights--an assumption in which we do not join--we have held that irreparable harm does not necessarily follow. In Abish v. Northwestern Nat'l Insurance Co., 924 F.2d 448 (2d Cir.1991), decided after Alberts, we held that the loss of a surety's rights to quia timet and exoneration does not "cause serious or irreparable consequences." Id. at 453. We stated that "[i]n determining whether irreparable harm exists, the critical inquiry is not whether the surety's rights are lost, but whether the loss of those rights will cause serious or irreparable harm." Id. We held, in Abish, that because the surety's claims for quia timet and exoneration relief contemplated a monetary award, the surety would have to establish more to persuade us that it could not "be made whole upon resolution of the merits." Id.
 
 
 17
 Reliance would have us distinguish Abish because it dealt only with a point of appellate procedure. Abish involved an appeal from a non-final order entered after the district court's refusal to exercise its general equitable powers, rather than an appeal from the grant of a preliminary injunction. To be precise, the surety in Abish appealed from the district court's refusal to grant preliminary quia timet and exoneration relief. Because the district court's denial of the motion was not a final order, there was obviously a threshold question of appellate jurisdiction. The surety in Abish argued that the district court's ruling amounted to an appealable interlocutory order because a district court's refusal to grant quia timet and exoneration is the functional equivalent of the denial of a preliminary injunction, and such a denial, even though interlocutory, is appealable by statute. 28 U.S.C. Sec. 1292(a)(1).
 
 
 18
 It is true that interlocutory orders that have the "practical effect" of a preliminary injunction are appealable if the appellant demonstrates that absent the relief, it faces " 'serious, perhaps irreparable, consequence[s].' " Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981) (quoting Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955)); Korea Shipping Corp. v. New York Shipping Ass'n, 811 F.2d 124, 126 (2d Cir.1987). Abish held, however, that the district court's refusal to grant quia timet and exoneration relief was not appealable because, even if those rights were lost--a point not decided in Abish--the loss was nothing more than a potential monetary loss, one that could be fully compensated by a subsequent money judgment. In other words, the loss of those rights alone would not cause irreparable consequences.
 
 
 19
 The logic of Abish is equally applicable here. In Abish, we analyzed the question of irreparable harm to determine whether an interlocutory appeal was warranted; here, we examine the same question to determine whether a preliminary injunction was justified. The analysis is the same in both cases. While any eventual loss of the rights to quia timet and exoneration may cause harm to the surety, that harm is not irreparable when the surety can be fully compensated by the ultimate determination of the litigation. Here, the surety's claims are nothing more than requests for preliminary relief to avoid a potential monetary loss; there has been no claim of impending insolvency or other irreparable consequences that would flow directly from the monetary loss. Reliance has failed to demonstrate why the possible loss of its suretyship rights, standing alone, will cause it to suffer irreparable harm; it can be fully compensated by the ultimate determination on the merits. Furthermore, we note that Reliance chose to make payments to the creditors beginning in September, 1987. Not until October, 1990 did Reliance decide to assert its rights to quia timet and exoneration. In Abish we recognized that such an extensive delay belies the surety's claim that it will suffer irreparable injury. "It strains credulity to assert that [the surety] will sustain irreparable consequences after standing mute for so long." Abish, 924 F.2d at 454. As such, there has been an insufficient showing of irreparable harm to justify the present injunction.
 
 CONCLUSION
 
 20
 We hold that the injunction enforcing the rights of quia timet and exoneration was improvidently granted because Reliance, as surety, has failed to establish any irreparable harm flowing solely from the loss of its rights.
 
 
 21
 Vacated and Remanded.