**FLUOR DANIEL ARGENTINA, INC., Plaintiff,**

v.

**ANZ BANK a/k/a Australia and New Zealand Banking Group, Ltd. and Minera Alumbrera, Ltd., Defendants.**

No. 98 Civ. 5876.

United States District Court, S.D. New York.

Aug. 20, 1998.

George J. Grumbach, Jr., Cleary, Gottlieb, Steen & Hamilton, New York City, for plaintiff.

Joseph Neuhaus, Sullivan & Cromwell, New York City, for defendant Minera Alumbrera, Ltd.

Christine B. Cesare, Emmet, Marvin & Martin, LLP, New York City, for defendant ANZ Bank.

## MEMORANDUM ORDER

RAKOFF, District Judge.

On August 18, 1998, plaintiff Fluor Daniel Argentina, Inc. ("FDA"), upon filing its Complaint in this action, promptly moved for a temporary restraining order and preliminary injunction prohibiting defendant Minera Alumbrera, Ltd. ("Minera") from drawing upon, and defendant ANZ Bank a/k/a Australia and New Zealand Banking Group, Ltd. ("ANZ") from paying on, a letter of credit issued by ANZ of which Minera is the beneficiary, or, alternatively, prohibiting Minera, in the event ANZ honors the draw down of the letter of credit, from removing such funds from the United States. Because the draw down was due to occur as early as August 21, 1998, the motion was assigned to this judge, sitting in Part I of this Court. Upon consideration of the parties' written submissions and the oral argument held on August 18, 1998, the Court denies FDA's motion in its entirety, for the following reasons.

FDA is a Delaware corporation engaged in the business of providing engineering construction and construction management services in the design and construction of mining and other large facilities. Minera is a corporation organized under the laws of Antigua and Barbuda that is jointly owned by three international mining companies and backed by a project finance facility in excess of $500 million. In May 1995, FDA contracted with Minera to help design and construct for Minera a very large copper and gold ore mining facility in Catamarca, Argentina. In return, FDA was to receive a fixed fee in monthly installments. The contract further provided, however, that until the stage of "Practical Completion" of FDA's services, Minera could withhold fifty percent of the monthly payments to FDA unless FDA, in lieu of such holdback, provided an equivalent letter of credit for the benefit of Minera. FDA provided such a letter of credit, issued by ANZ. It is presently in the amount of $3,800,000.

According to FDA, Practical Completion was achieved in November 1997, and it is undisputed that commercial production began at the mine in early 1998. However, in the course of the construction certain disputes arose between FDA and Minera involving many millions of dollars. On August 10, 1998, with the parties unable to resolve their disputes amicably, FDA notified Minera of its intent to pursue arbitration, while Minera commenced an action in this Court against FDA's parent company, Fluor Daniel, Inc., the guarantor of FDA's performance under the contract.

Based on its view that these disputes related in part to contingencies secured by the letter of credit, Minera also notified FDA of its intent to make a draft upon the letter of credit for the entire $3,800,000 balance. In response, FDA, contending that Minera's position was not only contrary to the contract but taken in bad faith, commenced the instant action, seeking the injunctive relief described above.

■ It is settled law in this Circuit that "[i]n order to justify the award of a preliminary injunction, the moving party must demonstrate that it is likely to suffer irreparable harm in the absence of the requested relief. The movant also must demonstrate either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sal Tinnerello & Sons, Inc. v. Town of Stonington,* 141 F.3d 46, 51–52 (2d Cir.1998) (citations omitted), *petition for cert. filed,* 67 U.S.L.W. 3082 (July 2, 1998). Here, as to the likelihood of irreparable harm, plaintiff contends that "it is highly unlikely that [Minera] will have assets which FDA can reach to satisfy any final judgment it may obtain in its favor." Pl.Br. at 14. But its showing in support of this contention is neither legally nor factually sufficient. As a matter of law, "[m]onetary loss alone will generally not amount to irreparable harm," *Borey v. Nat'l Union Fire Ins. Co.,* 934 F.2d 30, 34 (2d Cir.1991), and therefore a preliminary injunction usually "is inappropriate where the potential harm is strictly financial," *Sperry International Trade, Inc. v. Gov't of Israel,* 670 F.2d 8, 12 (2d Cir.1982) (vacating injunction prohibiting foreign government from drawing on letter of credit). Furthermore, even in those unusual circumstances where monetary loss may support a finding of irreparable harm, such as "where insolvency threatens to frustrate a damage award," *Brenntag Int'l Chemicals, Inc. v. Norddeutsche Landesbank GZ,* 9 F.Supp.2d 331, 344–45 (S.D.N.Y.1998), "conclusory assertions of [a] defendant['s] financial weakness do not demonstrate a likelihood of" such harm, *Gladstone v. Waldron & Co.,* No. 98 Civ.2038, 1998 WL 150982, at *2 (S.D.N.Y. Mar. 31, 1998) (citing cases). Yet here FDA offers little more than speculation and surmise in support of its claim of inordinate financial risk.

■ Specifically, FDA argues that all of Minera's assets relate to the mining facility that is already the subject of lawsuits and financial disputes and whose prospects are, in any event, rendered uncertain by large fluctuations in the market prices for copper and gold (which recently have been relatively low). *See* Declaration of George J. Grumbach, Jr., dated August 18, 1998, Exs. 4, 7;

Second Supplemental Declaration of George J. Grumbach, Jr., dated August 19, 1998, Ex. 1. Even on its face, however, none of FDA's evidence remotely suggests that Minera is anywhere near to facing the insolvency that was present in each of the cases on which FDA relies where the inability of a defendant to satisfy a money judgment was found to constitute irreparable harm. *See* Pl.Br. at 13–14 (citing cases); *see also, e.g., Brenntag,* 9 F.Supp.2d at 345–46 (finding irreparable harm where drawer of letter of credit was insolvent and under supervision of receiver). Moreover, FDA's speculation as to Minera's potential financial difficulties is countered by a sworn declaration of the former President of Minera (and current Executive General Manager of M.I.M. Holdings Ltd., one of Minera's three parent companies), who avers that the mining facility exports 40–50,000 tons of metal products per month, with an estimated sale value of $20–30 million per month at current prices, and that Minera expects to continue to operate the mine for 18–20 years. *See* Declaration of Peter E. Freund, dated August 19, 1998, ¶ 3. Minera's declarant also avers that the book value of Minera's hard assets, based on the cost of the mining facilities and related infrastructure that FDA was hired to build, is approximately $1.2 billion. *See id.* ¶ 2. Even taking into account Minera's borrowing from project finance lenders (about $589 million) and its debt to its shareholders (about $289 million), *see id.,* the book value of these hard assets far exceeds the amount of the letter of credit. Furthermore, while one can never wholly discount future dangers, FDA's evidence neither supports a finding of any undue danger of future insolvency nor indicates that the market fluctuations to which FDA refers present unusual risks beyond those associated with trade in any similar commodity.

■ FDA further argues that because Minera has no assets in the United States and operates solely in Argentina, enforcement of any United States money judgment rendered against Minera (such as, for example, because of any wrongful drawdown of the letter of credit) would be difficult to enforce. However, while the need to resort to the legal processes of Argentina might well complicate such enforcement efforts, *see*

*generally* Declaration of Pablo Pinnel, dated August 19, 1998, these complexities do not rise to the extraordinary level sufficient to warrant a finding of irreparable harm in such circumstances. *Cf. Rockwell Int'l Sys., Inc. v. Citibank, N.A.,* 719 F.2d 583, 587–588 (2d Cir.1983) (finding that plaintiff probably would be unable to recover money damages against Iranian bank seeking to draw on letter of credit, where Iran–United States Claim Tribunal likely lacked jurisdiction and post-revolutionary Iranian judicial system was incapable of providing an adequate remedy).

Moreover, such risks as arise from Minera's strictly Argentine status were fully foreseeable by FDA when it entered into its agreement with Minera and effectively assumed these risks. *See KMW International v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 15 (2d Cir.1979). To enjoin payment on a letter of credit solely because of foreseeable risks associated with enforcement in a foreign jurisdiction of a United States money judgment against the drawer would in large part frustrate the ability of parties that engage in international commerce to rely on those letters of credit when structuring their transactions. Letters of credit are "of particular importance in international transactions, in which sophisticated investors knowingly undertake such risks … in return for the benefits to be reaped from international trade," *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 474 (5th Cir.1985), but their value "is predicated upon [their] degree of legal certainty," *KMW International,* 606 F.2d at 16 (quoting B. Kozolchyk, *Commercial Letters of Credit in the Americas,* § 18.04(1), at 394–95 (1966)). The channels of trade would be chilled if not frozen if parties seeking to engage in international transactions were unable to rely on letters of credit to reduce the uncertainties accompanying such transactions.

In sum, FDA has utterly failed to establish a likelihood of irreparable harm. Accordingly, the Court need not consider the other prerequisites to the granting of injunctive relief, because, under any standard, the movant's failure to show the likelihood of irrepa-

rable harm is fatal to the motion. FDA's motion for a temporary restraining order and preliminary injunction must therefore be denied.

SO ORDERED.