EMPIRE STATE RESTAURANT AND TAVERN ASSOCIATION, INC., Donna Deats, d/b/a Lost & Found Inn, Four Seasons Beverage and Catering, Inc., d/b/a Tazmond's Pub, Keefe's Tavern, Inc., d/b/a Keefe's Tavern, Buies, Inc., d/b/a Dodester's, Barmarsue, Inc., d/b/a Murray's, and Walter G. Bandych, d/b/a Stash's Pub, Plaintiffs,

v.

NEW YORK State, New York State Department of Law, Eliot Spitzer, in his Official Capacity as Attorney General of the State of New York, New York State Department of Health, and Antonia C. Novello, in her Official Capacity as Commissioner of the New York State Department of Health, Defendants.

No. 1:03–CV–0918(LEK).

United States District Court, N.D. New York.

Oct. 21, 2003.

George H. Lowe, Bond, Schoeneck Law Firm, Syracuse, NY, Kevin T. Mulhearn, Office of Kevin T. Mulhearn, Orangeburg, NY, for plaintiffs.

Charles J. Quackenbush, New York State Attorney General, Albany, NY, for defendants.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

### I. Background

On March 26, 2003, New York State enacted Chapter 13 of the Laws of 2003 ("Chapter 13"), which amended the Clean Indoor Air Act, Ch. 244 of the Laws of 1989. Chapter 13 regulates smoking in a number of public and work places, including bars and food service establishments, and it imposes civil penalties of no greater than two thousand dollars for those who fail to comply with its provisions. Those subject to Chapter 13 include: (1) any person or entity that controls the use of an area in which smoking is prohibited, (2) any employer whose place of employment is an area in which smoking is prohibited, and (3) any person who smokes in an area where smoking is prohibited. Enforcement of Chapter 13 is left to local county boards of health, officers designated by elected county legislatures or boards of supervisors, or, absent such boards of health or designated officers, then the New York State Department of Health.

Chapter 13 became effective on July 24, 2003. Two days prior, Plaintiffs brought this action, which asks the Court to declare Chapter 13 unconstitutional, and to permanently enjoin Defendants from enacting or enforcing Chapter 13, on the grounds that (1) Chapter 13 is preempted by the Occupational Safety and Health Act of 1970 ("OSH Act") and (2) Chapter 13 is impermissibly vague. Presently before the Court is Plaintiffs' motion for preliminary injunctive relief enjoining Defendants from enforcing Chapter 13 until a decision can be reached on the merits of their claims. For the reasons set forth below, the Plaintiffs' motion is denied.

### II. Discussion

The only issues being raised by the Plaintiffs in this action are (1) whether the federal government already regulates environmental tobacco smoke, therefore preempting state attempts to regulate in this field, (2) whether the language in Chapter 13 distinguishing bars from food service establishments is unconstitutionally vague, and (3) whether the provision in Chapter 13 that grants enforcement officers the authority to issue waivers from the application of its specific provisions is unconstitutionally vague. The Plaintiffs' present motion asks the Court to preliminarily enjoin Defendants from enforcing Chapter 13 until the above issues can be decided on the merits.

To succeed in an application for preliminary injunctive relief, Plaintiffs must establish "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in [Plaintiffs'] favor." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 108 (2d Cir.2003)(internal quotations omitted).

### (i) Likelihood of Success on the Merits

### (a) Preemption

The Supremacy Clause of the United States Constitution declares that "the Laws of the United States...shall be the supreme Law of the Land...any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. As a consequence, "state and local laws are preempted where they conflict with the dictates of federal law, and must yield to those dictates." *Ace Auto Body and Towing, Ltd. v. City of New York*, 171 F.3d 765, 771 (2d Cir.1999). "Preemption may be express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.* (internal quotations omitted).

The dispositive issue with respect to Plaintiffs' preemption claim is whether 29 C.F.R. § 1910.1000, which adopts standards relating to permissible safe exposure levels for employees exposed to "toxic and hazardous substances," constitutes a federal standard that preempts state legislation or regulation of occupational tobacco pollution. The standards in 1910.1000 set forth specific limits as to permissible levels of employee exposure in the workplace to various toxic and hazardous substances, including but not limited to the substances that comprise environmental tobacco smoke. Plaintiffs argue that these standards amount to an attempt by the federal government to occupy the field of regulation regarding environmental tobacco smoke and to regulate worker exposure to such smoke.

To support their claim, Plaintiffs rely primarily on public correspondence from the Occupational Safety & Health Administration ("OSHA"). Plaintiffs cite an April 7, 1998 letter stating that "OSHA does attempt to regulate worker exposure to tobacco smoke by applying 29 C.F.R. § 1910.1000 [but that OSHA] rarely [finds] that worker exposures exceed the permissible exposure limit (PEL) for carbon monoxide or any other pertinent PEL in the standard." (*See* Plaintiffs' Reply Memorandum at 18)(quoting an April 7, 1998 letter from John B. Miles, Jr., OSHA, Director, Directorate of Compliance Programs). Plaintiffs also cite a July 8, 1997 letter, which says that "field studies of environmental tobacco smoke indicate that, under normal conditions, the components in tobacco smoke are diluted below existing [PELs]" and that "it would be very rare to find a workplace with so much smoking that any individual PEL would be exceeded." (Plaintiffs' Reply Memorandum at 19)(quoting a July 8, 1997 letter from Greg Watchman, OSHA, Acting Assistant Secretary (the "Watchman letter")).

While these letters might appear to indicate some intent on the part of OSHA to regulate environmental tobacco smoke in the workplace, further investigation of this and other OSHA correspondence leads the Court to conclude otherwise. For instance, in a March 30, 1990 letter, published on the OSHA web site under the heading of "Standard Interpretations," Gerard F. Scannell, Assistant Secretary, writes

that "[c]urrently, OSHA has no regulation which specifically addresses tobacco smoke as a whole because it is such a complex mixture. OSHA does, however, have standards which limit employee exposure to several of the main chemical components found in tobacco smoke." (March 30, 1990 letter from Gerard F. Scannell, OSHA, Assistant Secretary, available at http://www.osha.gov/pls/osha web/owadisp.show_document?p_table=INTER-PRETATIONS & p_id=19955.) Additionally, the July 8, 1997 letter from Greg Watchman, quoted above, goes on to state that OSHA was concerned that "synergism of the chemicals in tobacco smoke may lead to adverse health effects even though the PELs are often not exceeded." (Watchman letter). He also wrote that "[i]n response to this adverse health risk information, the Agency proposed restricting smoking in workplaces," but that the Agency was not yet ready to make final decisions on the resolution of the proposed rule. Id. Finally, on March 3, 1988, Roy Gibbs, Director of the Office of Science and Technology Assessment, wrote that OSHA "does not have a standard on worker exposure to cigarette smoke in the workplace," but that OSHA "does have an air contaminant standard, 29 CFR 1910.1000, Table Z–1, for the components of cigarette smoke, such as nicotine and carbon monoxide." (March 3, 1988 letter from Roy Gibbs, OSHA, Director, Office of Science and Technology Assessment, available at http://www.osha.gov/pls/osha web/owadisp.show_document?p_table=INTERPRETATIONS & p_id=19641).

Together these interpretive letters paint a fairly definitive picture of the OSHA regulatory scheme. While OSHA has established standards for the regulation of a number of toxic and hazardous substances, some of which are included in tobacco smoke, OSHA has not promulgated any standards or regulations pertaining to tobacco smoke as a whole. The Court concludes that 29 C.F.R. § 1910.1000 merely establishes standards for the permissible level of exposure in the workplace to the listed toxic and hazardous substances. Nothing within the regulation indicates that it is meant to apply to combinations of the listed substances generally, or to the combination of substances that constitutes environmental tobacco smoke, specifically. Current OSHA regulations do not take into account the "synergism of chemicals in tobacco smoke," and, simply put, regulation of each of the parts should not be construed as regulation of the whole.

Even more telling than the above correspondence, the United States Secretary of Labor spent a number of years exploring the issue of whether to develop national workplace tobacco smoke standards and ultimately decided not to promulgate such standards. (Defendants' Memorandum at 10). On December 17, 2001, OSHA withdrew a proposal that included environmental tobacco smoke provisions and terminated the corresponding administrative rulemaking proceeding. OSHA noted that "[i]n the years since the proposal was issued, a great many state and local governments and private employers have taken action to curtail smoking in public areas and in workplaces." (Withdrawal of Proposed Rule, 66 Fed.Reg. 64946 (Dec. 17, 2001)). This notice, and its acknowledgment that state and local governments have acted to regulate environmental tobacco smoke, indicates both that OSHA does not consider 1910.1000 to be a regulation of environmental tobacco smoke and that whatever regulations OSHA has promulgated regarding toxic substances (including those substances contained in tobacco smoke), they were not intended to preempt state regulation of environmental tobacco smoke.

Defendants also refer to a February 24, 1998 letter from Frank Frodyma, OSHA's Acting Director of Policy, to the State of Wisconsin as further evidence that state regulations of tobacco smoke in the workplace are not preempted by any OSHA regulations. This letter informed the state that "[s]ince OSHA has not promulgated a rule on Indoor Air Quality, Wisconsin's promulgation and enforcement of State laws and local ordinances addressing the issue of occupational exposure to tobacco smoke would not be subject to claims of preemption until such time as Federal OSHA adopts such a standard." (Defendants' Memorandum at 11, FN 27) (quoting February 24, 1998 letter from Frank Frodyma, OSHA, Acting Director of Policy). This letter explicitly states that the standards regulating permissible exposure to the individual substances listed in the Statute do not apply to environmental tobacco smoke as a whole. Further, this letter states that laws such as Chapter 13 should not be deemed preempted by OSHA regulations. Plaintiffs' preemption claim, then, must fail.

**(b) Vagueness**

Plaintiffs also challenge Chapter 13 on the ground that it is unconstitutionally vague in two ways. First, Plaintiffs argue that Chapter 13 does not properly distinguish a "food service establishment" from a "bar" and that Chapter 13 is therefore unconstitutionally vague in that it fails to give the public a reasonable opportunity to know what is prohibited. Section 4(6) of Chapter 13 provides that smoking shall be permitted in certain "Outdoor dining areas of food service establishments," which is defined in Section 1(3) as "any area, including outdoor seating areas, or portion thereof in which the business is the sale of food for on-premises consumption." Chapter 13 defines "bar," however, as "any area, including outdoor seating areas, de-

voted to the sale and service of alcoholic beverages for on-premises consumption and where the service of food is only *incidental to* the consumption of such beverages." NY Pub Health § 1399–n (emphasis added). It is this "incidental to" language that Plaintiffs challenge as unconstitutionally vague.

■ As an initial matter, the Court notes that the United States Supreme Court has held before that "incidental to" language is not unconstitutionally vague, at least with respect to business owners. In *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Supreme Court, in examining a county law prohibiting Sunday retail sales of everything other than "merchandise essential to, or customarily sold at, or *incidental to*, the operation of" bathing beaches and amusement parks. *Id.*, at 428, 81 S.Ct. 1101. (emphasis added). The Court held that this exemption was not unconstitutionally vague, stating that "business people of ordinary intelligence...would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation at a nearby bathing beach or amusement park within the county." *Id.* In other words, the average business owner would be able to determine, either through the exercise of common sense or through minimal investigation, whether his merchandise is of the sort incidental to the operation of a beach or amusement park. Likewise in this case, the Court finds that the owners of New York State establishments are sufficiently capable of determining whether their business is one at which the service of food is merely incidental to the service of alcoholic beverages.

In their Reply Memorandum, Plaintiffs do acknowledge that the Department of

Health has provided and will continue to provide advice in response to inquiries by bar and restaurant owners with respect to whether an establishment's food service is "incidental" to the consumption of alcoholic beverages. However, Plaintiffs characterize the vagueness problem as one pertaining to patrons of bar/restaurant establishments rather than owners or operators. "Chapter 13 is unconstitutional," they argue, "because a patron who frequents an establishment with outdoor seating will necessarily have to guess as to whether such an establishment is a 'food service establishment' or a 'bar.' " (Plaintiffs' Reply Memorandum at 16).

The Court finds this argument unpersuasive. Given that this Court has determined that the owners and operators of bar and restaurant establishments can reasonably determine whether their particular establishments are classified as bars or restaurants, Plaintiffs present no reason as to why a patron could not simply walk into an establishment and ask whether smoking is permitted. In addition, § 1399–p requires that "Smoking" or "No Smoking" signs, or the international "No Smoking" symbol be prominently posted and properly maintained by the owner, operator, manager, or other person having control over an area where smoking is regulated by Chapter 13. Certainly it is not unreasonable to expect a patron to enter an establishment and look for a "prominently posted" sign regarding whether or not smoking is permitted in that establishment. Chapter 13's "incidental to" language is not unconstitutionally vague with respect to the owners or operators of bar

and restaurant establishments, nor can it be deemed unconstitutionally vague with respect to patrons, since the owners or operators have an affirmative duty to notify their patrons whether smoking is permitted.

Plaintiffs' second vagueness challenge relates to Chapter 13's waiver provision, which states that an enforcement officer may grant a waiver from the application of specific provisions of Chapter 13 if the applicant for a waiver can establish that compliance with a specific provision would cause "undue financial hardship" or that other factors exist which would render compliance "unreasonable." NY Pub Health § 1399–u. This waiver provision is qualified in that "[e]very waiver granted shall be subject to such conditions or restrictions as may be necessary to minimize the adverse effects of the waiver upon persons subject to an involuntary exposure to second-hand smoke and to ensure that the waiver is consistent with the general purpose of [Chapter 13]." Id.

■ The Court finds that this language is sufficiently definite to render it constitutionally acceptable. The United States Supreme Court has held that in examining a facial vagueness challenge to a statute that implicates no constitutionally protected conduct, a court should uphold the challenge "only if the enactment is impermissibly vague in all of its applications." [1] *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The Court also stated in that case that "the degree of vagueness that the Consti-

1. Indicative of how broad this standard has been interpreted to be, the Sixth Circuit has stated that facial vagueness challenges must be limited to enactments involving First Amendment rights or providing for criminal penalties. *See Belle Maer Harbor v. Charter Township of Harrison,* 170 F.3d 553, 557 (6th Cir.1999). Thus, were a vagueness challenge to be brought against a statute similar to Chapter 13 within the Sixth Circuit, the challenge would have to be limited to an "as applied" challenge, rather than the facial challenge brought here.

tution tolerates...depends in part on the nature of the enactment," and that "the Court has...expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.*, at 498–99, 102 S.Ct. 1186.

The Second Circuit has applied this case law in a context similar to that of the present action. In *Sanitation and Recycling Industry v. City of New York*, 107 F.3d 985 (2d Cir.1997), the Court upheld a New York City law regulating commercial garbage carting businesses. The statute in that case limited the terms of all private carting contracts to two years. Current contracts were made terminable at will by the carter or customer, with an exception to this rule being that a carter could ask the New York City Trade Waste Commission to waive the termination provisions for particular contracts. The Commission was authorized to "determin[e] in its discretion whether a waiver of the termination requirement would be consistent with the purposes of" the act, and was instructed to consider background information concerning the business, its principals, and the full circumstances surrounding the contract's negotiation. *Id.*, at 991–92.

Plaintiffs in that case challenged the constitutionality of the law, claiming, among other things, that the "waiver provision [provided] no meaningful standard to inform the Commission's discretion and [allowed] the granting or denying of a license where there [was] no provision for notice and an opportunity to be heard." *Id.*, at 994. The Court found the provision constitutional, citing *Hoffman Estates'* "broad standard" governing vagueness challenges and stating that the law's recited purposes gave the Commission sufficient legislative direction such that the law was not impermissibly vague. *Id.*, at 995.

Other courts have made the same finding with respect to language equally, or even less, defined than that challenged by Plaintiffs in the instant action. For instance, the First Circuit, in a challenge brought by homeowners regarding a statute governing the moving of buildings on a public roadway, held that statutory language authorizing "selectmen" to grant permits "upon such terms as in their opinion the public safety may require" was constitutionally sufficient. *Donovan v. City of Haverhill*, 311 F.3d 74, 78. The Court there noted that to "prevail in a facial challenge to an ordinance that does not regulate constitutionally protected conduct, plaintiffs must surmount a dauntingly high hurdle." *Id.*, at 77.

Upholding a statute using language almost identical to that used in Chapter 13, the Eastern District of Louisiana found an ordinance to be clear and unambiguous, and therefore not constitutionally vague, which granted the city council authority to "waive the provisions of [the ordinance] with respect to [an aggrieved] party upon a showing that he would experience undue hardship and that the character of the neighborhood involved would not be adversely affected." *Jackson Court Condominiums, Inc. v. City of New Orleans*, 665 F.Supp. 1235, 1242 (E.D.La.1987).

The statute challenged in the present action uses language at least as definite as that used in both the *Sanitation* case and in the above-cited cases from outside of the Second Circuit. Here, the legislature has given enforcement officers the authority to grant waivers if compliance with the statute would cause undue hardship or would otherwise be unreasonable, and the legislature has directed this authority to be exercised "subject to such conditions or restrictions as may be necessary to minimize the adverse effects of the waiver upon persons subject to an involuntary

exposure to second-hand smoke and to ensure that the waiver is consistent with the general purpose of [Chapter 13]." The Court finds that this guidance at least equals, if not eclipses, the guidance given to the various administrators in the above-cited cases. The Court holds that Chapter 13's language regarding the granting of waiver provisions is not unconstitutionally vague, and Plaintiffs' challenge of the statute on such grounds is not likely to succeed on the merits.

Finally, Plaintiffs have presented evidence demonstrating that waivers have not been granted by Chapter 13's enforcement officers, and claim that this blanket denial of waivers indicates that the waiver provision is unconstitutionally vague.[2] However, the mere fact that the New York State Department of Health and the various local county departments of health have publicly stated a blanket refusal to consider waiver applications does not render Chapter 13 unconstitutionally vague. The law itself dictates that these enforcement officers use their discretion, within the bounds set forth in the § 1399–u waiver provision, to grant waivers. Chapter 13 charges these enforcement officers with the responsibility of examining waiver applications on a case by case basis, and their failure to exercise this responsibility, or to invoke their discretion, is not indicative of a constitutional infirmity within the statute. It is simply a failure to act in accordance with what the statute dictates.

In enacting Chapter 13, the legislature provided the degree of guidance necessary to render the waiver provision constitutionally permissible. The legislature also showed its intent to mitigate the potentially harsh effects of the law. It becomes the charge of the various local enforcement officers, or in some cases the New York State Department of Health, to fulfill the legislature's intent by (1) utilizing their discretion to establish criteria within their local jurisdictions to enforce this waiver provision, and then (2) deciding whether to grant or deny individual waiver applications. Their failure to do so is a problem of enforcement and not a problem with the statute itself. Plaintiffs' proper recourse, it follows, is to challenge this failure to enforce the statute rather than to challenge the statute itself.

### (ii) Balance of Hardships

The Court finds that the balance of hardships in this case does not tip decidedly in Plaintiffs' favor. The Court finds that the qualitative difference between adverse business consequences and adverse physical health effects weighs in the favor of Defendants.

### (iii) Irreparable Harm

Because Plaintiffs have failed to establish either a likelihood of success on the merits or sufficiently serious questions going to the merits that make them a fair ground for litigation plus a balance of hardships tipping decidedly in their favor, the Court needn't reach the issue of

---

2. For instance, Plaintiff cites a letter from the Madison County Department of Health to a waiver applicant stating that "waivers only distort [a level playing field for all businesses] and weaken the public health protections intended by [Chapter 13]," and that "for these fundamental reasons" the waiver application was denied. (Plaintiffs' Reply Memorandum at 12) (quoting a July 23, 2003 letter from the Madison County Department of Health).

Likewise, Plaintiffs cite numerous letters from other county health departments issuing blanket denials on the grounds that Chapter 13 fails to clearly define the parameters of undue financial hardship, or that they will not take any actions regarding the waiver provisions of Chapter 13 until the waiver provision language is clarified and specific criteria are established by the New York State Legislature. Id.

whether Plaintiffs would suffer irreparable harm absent an injunction. The Court does note, however, that Plaintiffs would have to demonstrate that it is *likely* that they would suffer irreparable harm should injunctive relief be denied, as "a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir.1991).

### III. Conclusion

For the reasons set forth above, it is hereby

ORDERED, that the Plaintiffs' request for preliminary injunctive relief is DE-NIED; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.