**James and Barbara KING, Parents of Robert K., A Disabled Student, Plaintiffs,**

v.

**PINE PLAINS CENTRAL SCHOOL DISTRICT, Dutchess County Department of Social Services and the State Education Department, Defendants.**

No. 95 Civ. 10365 (WCC).

United States District Court, S.D. New York.

March 6, 1996.

Family Advocates, Inc., New Paltz, New York (Lori S. Schreier, Rosalee Charpentier, of counsel), for Plaintiffs.

Shaw & Perelson, LLP. Pine Plains Central School District, Highland, New York (David S. Shaw, Lisa A. Schreiner, of counsel), Ian G. MacDonald, County Attorney, Dutchess County Department of Social Services, Poughkeepsie, New York (Thomas P. Delpizzo, of counsel), Dennis C. Vacco, Attorney General of State of New York, State Education Department, New York City (Jeffrey I. Slonim, of counsel), for defendant.

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs James and Barbara King, the parents of a disabled child, filed this action on December 8, 1995, against defendants Pine Plains Central School District ("Pine Plains"), Dutchess County Department of Social Services ("DSS") and the New York State Education Department ("SED"). Plaintiffs assert claims under various provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and 42 U.S.C. § 1983. Each of the defendants has moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim. In addition, Pine Plains has moved to dismiss under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and DSS has moved to dismiss under Fed.R.Civ.P. 19 and 12(b)(7) for failure to join a necessary party. Plaintiffs have moved for a preliminary injunction. For the reasons set forth below, defendants' motions are granted in part and denied in part. Plaintiffs' motion is denied in part.

## BACKGROUND

The IDEA is a comprehensive statutory framework established by Congress to aid the states in providing disabled children with a "free appropriate public education." 20 U.S.C. § 1400(c); *Mrs. W v. Tirozzi,* 832 F.2d 748, 750 (2d Cir.1987). To safeguard the right to a free appropriate public education, the IDEA imposes elaborate procedural requirements to which states receiving federal financial assistance must adhere. *See* 20 U.S.C. § 1415. New York has enacted a body of statutes that define the rights and obligations, both procedural and substantive, of parents, school districts, SED and other state and local agencies that are involved in the education of disabled children. *See* N.Y.Educ.Law § 4001 *et seq.*

Under the IDEA, parents must be given an opportunity to bring complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E). Complaints are reviewed at an "impartial due process hearing" conducted by the state or local educational agency. *See* 20 U.S.C. § 1415(b)(2); N.Y.Educ.Law § 4404(1). If a hearing is conducted at the local level, an appeal may be had to the state agency. *See* 20 U.S.C. § 1415(c); N.Y.Educ. Law § 4404(2). Upon exhaustion of these administrative remedies, an aggrieved party may then appeal to a federal or state court, which may grant appropriate relief. *See* 20 U.S.C. § 1415(e)(2).

While review proceedings are pending, unless the parent and school district agree otherwise, the child shall remain in his then current educational placement. *See* 20 U.S.C. § 1415(e)(3); N.Y.Educ.Law § 4404(4). A parent who incurs expenses by

changing his child's placement without the consent of the school district does so at his own financial risk. The Supreme Court has held, however, that the parent is entitled to reimbursement for any expenditures that resulted from his unilateral decision to change his child's placement if the reviewing officer or the court determines that the child's original placement was inappropriate and that the parent's placement was appropriate. *See School Comm. of the Town of Burlington v. Dep't of Educ. of Massachusetts,* 471 U.S. 359, 369–74, 105 S.Ct. 1996, 2002–04, 85 L.Ed.2d 385 (1985).

Against this legal backdrop, we turn to the circumstances of this particular case. Treating the allegations in the complaint as true, as we must when considering a motion to dismiss, the plaintiffs in this action are the adoptive parents of a 16–year–old child, Robert, who has been classified as multiply disabled. During the 1992–93 school year, Robert lived with his mother in Brewster, New York, and attended a local public school where he received special education. In the summer of 1993, as a result of Robert's behavioral problems, his parents placed him in Four Winds Psychiatric Hospital ("Four Winds") in Katonah, New York. Upon his discharge from Four Winds later that summer, Robert moved to his father's home in Clinton Corners, New York, and enrolled in the Pine Plains Central School District.

As is required by the IDEA and the corresponding New York statute, *see* 20 U.S.C. §§ 1401(a)(19), 1414(a)(5); N.Y.Educ.Law § 4402, the Pine Plains Committee on Special Education ("CSE") met to develop an individualized education program ("IEP") for Robert for the 1993–94 school year. Robert's parents requested that the school district place him in a residential facility. The CSE chose instead to place Robert in special education classes at a local public school. According to plaintiffs, Robert experienced difficulties throughout the 1993–94 school year. In April 1994, plaintiffs complained to the CSE that Robert was not receiving an appropriate education.

On June 9, 1994, Robert was readmitted to Four Winds because of "fire-setting incidents and physically assaultive behavior." Complaint, at ¶ 24. As a result of a fire-setting incident, Robert was referred to the District Attorney's office and to DSS for assessment and placement consideration. At the request of Robert's parents, the school district paid for an independent evaluation of Robert's educational needs. The independent expert recommended residential placement, as did the staff at Four Winds.

On August 30, 1994, the CSE met to consider Robert's IEP for the 1994–95 school year. His parents once again requested residential placement for Robert, but the CSE determined that placement in special education classes in a program at the local public school would be appropriate. On September 5, 1994, plaintiffs asked for an impartial hearing to contest that decision. On October 29, 1994, before the hearing was completed, the Family Court ordered Robert's placement, under the auspices of DSS, at the Devereux School ("Devereux"). Devereux is a private residential school that specializes in teaching disabled children. Robert entered Devereux on November 1, 1994, and has remained there since.

On April 27, 1995, the impartial hearing officer ("IHO") issued a decision in which he ruled that Robert's 1994–95 IEP failed adequately to state Robert's current functioning levels, lacked criteria for determining whether Robert benefited from the prescribed program and lacked sufficiently individualized goals. Although the IHO found the 1994–95 IEP inadequate in these respects, he determined that plaintiffs were not entitled to reimbursement from Pine Plains for any costs that they might incur by sending Robert to Devereux pending the outcome of their appeal because they had failed to establish that Devereux was an appropriate placement for Robert.

Plaintiffs appealed this decision to the State Review Officer ("SRO"), who issued a ruling on August 17, 1995. The SRO noted that Pine Plains had not appealed the IHO's ruling that Robert's 1994–95 IEP was inadequate. He upheld the IHO's ruling denying plaintiffs' request for reimbursement for the cost of Robert's placement at Devereux on the ground that the Family Court, rather than plaintiffs acting unilaterally, had placed

Robert there. The SRO also reviewed the evidence submitted to the IHO and ruled that despite the flaws in Robert's 1994–95 IEP, placement in a special education program at his local public school, rather than a residential placement, was appropriate for Robert. Following the SRO's decision, *see* Plaintiffs' Memorandum of Law, at 3, DSS obtained an order from the Family Court that requires Robert's parents and his stepmother to pay approximately $1200/month toward his maintenance fees at Devereux. *See* N.Y.Fam.Ct.Act § 415 (authorizing Family Court to order parents to contribute a "fair and reasonable sum" for support of children placed by DSS.).

## DISCUSSION

### I. Motions to Dismiss

■■■ In evaluating defendants' motions to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), this Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). In order to prevail, the moving party must demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Anderson v. Coughlin,* 700 F.2d 37, 40 (2d Cir.1983). A court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■■■ Typically, the local school district in which a child resides is responsible for determining whether the child is disabled, developing his IEP and administering his educational program. *See* N.Y.Educ.Law § 4402. The range of placement options available to the school district includes place-

ment in a private residential facility. *See* N.Y.Educ.Law §§ 4401(2). Residential placement is appropriate, and must be provided by the school district at no cost to the parents, when it is necessary for the child to benefit educationally from instruction. *See* 34 C.F.R. § 300.302; *Board of Educ. of East Windsor Regional Sch. District v. Diamond,* 808 F.2d 987, 991–92 (3d Cir.1986); *Kruelle v. New Castle County Sch. Dist.,* 642 F.2d 687, 693–94 (3d Cir.1981). However, when "the residential placement is a response to medical, social or emotional problems that are segregable from the learning process," *Kruelle,* 642 F.2d at 693, the school district is not obligated to bear the total cost of the placement. Instead, the school district must cover the cost of special education and related services, as defined at 20 U.S.C. § 1401(a)(16)–(17), but need not fund medical treatment or other non-educational expenses. The distinction between educational placement and placement that addresses a disabled child's social, emotional or medical needs is easily stated, but its application is highly fact-specific. *Compare Windsor,* 808 F.2d at 991–93 (fully funded residential placement necessary for educational purposes); *North v. District of Columbia Bd. of Educ.,* 471 F.Supp. 136, 140–42 (D.D.C.1979) (same); *with Clovis Unified Sch. Dist. v. Calif. Office of Admin. Hearings,* 903 F.2d 635, 645–47 (9th Cir.1990) (residential placement was for medical purposes; local school district financially responsible only for providing instruction); *Field v. Haddonfield Bd. of Educ.,* 769 F.Supp. 1313, 1325–29 (D.N.J. 1991) (same).

In New York, the Family Court may also place a disabled child in a private residential facility.[1] *See* N.Y.Educ.Law § 4005. If appropriate for that particular child, his instruction may be provided at a school operated by the residential facility. *See* N.Y.Educ. Law § 4002(2)(d). Each institution that maintains a school is required to appoint a CSE, *see* N.Y.Educ.Law § 4002(3), and once

---

1. N.Y.Educ.Law §§ 4001–4006 govern the provision of instruction to children placed by the Family Court, the local social services agency or other state agencies in "child care institutions," which include private facilities like Devereux. *See* N.Y.Educ.Law § 4001(2). Disabled children

placed in private schools by public agencies have the same rights and are entitled to the same procedural safeguards as disabled children placed in public schools. *See* 34 C.F.R. §§ 300.2(c); 300.341(b), 300.401.

a public agency places a disabled child at the school, the CSE is required to develop an IEP in accordance with the same procedures and subject to the same review mechanisms that apply to the local school districts. *See* N.Y.Educ.Law §§ 4005(2); 4402; 4404.

■ Once the Family Court issues an order placing a child in a private residential facility, "[a]ny tuition expenses . . . shall be borne by the local social services district financially responsible for such child." N.Y.Educ.Law § 4004(2)(a). It is apparent from an examination of related statutory provisions that the local social services district is also responsible for the child's maintenance expenses. When a local school district places a child in a private residential facility for educational purposes, the local social services department is responsible for paying the child's maintenance. *See* N.Y.Educ.Law § 4405(1)(a). It would be anomalous indeed if, when the Family Court places a child in a private residential facility for educational purposes, the local social services department did not become obligated to pay the child's maintenance expenses. DSS does not contest that it, rather than Pine Plains, is responsible for Robert's maintenance.[2]

### A. Pine Plains's Motion to Dismiss

■ Plaintiffs have asserted the following claims against Pine Plains: that Pine Plains violated the IDEA and § 504 of the Rehabilitation Act of 1973 by failing to offer plaintiffs an appropriate IEP for 1994–95, that Pine Plains violated the IDEA by not developing an IEP that placed Robert in a residential program, that Pine Plains violated the IDEA by failing to adopt an IEP that reflected Robert's placement at Devereux once it occurred, that plaintiffs are entitled to reimbursement from Pine Plains for any costs that they incur for educating Robert at Devereux and that Pine Plains has violated 42 U.S.C. § 1983 by depriving plaintiffs of their

rights under the IDEA and section 504 of the Rehabilitation Act.[3]

Plaintiffs have failed to state a claim for relief against Pine Plains for any actions that Pine Plains allegedly took, or failed to take, after the Family Court placed Robert at Devereux on October 29, 1994. Once the Family Court issued its order, Pine Plains was no longer responsible for paying Robert's tuition or maintenance or for developing his IEP. Indeed, a local school district has only two obligations to fulfill once the Family Court has placed a child. The local school district must, upon notice from the Family Court, provide information and make a written recommendation concerning appropriate educational services for the child, which the Family Court must use in determining the child's placement. *See* N.Y.Educ.Law § 4005(1)(a). The local school district is also required to pay a specified sum to the state as partial reimbursement for the expense incurred by the state as a result of the child's placement. *See* N.Y.Educ.Law 4004(2)(a). Plaintiffs have not alleged that Pine Plains has failed to fulfill either of these requirements.

■ The IEP on which plaintiffs' claims against Pine Plains are based covered the entire 1994–95 school year, however, and the Family Court did not place Robert at Devereux until October 29, 1994. Pine Plains was therefore responsible for developing and implementing Robert's IEP and funding his education during September and October 1994. Nevertheless, plaintiffs' claims against Pine Plains, to the extent that they are based on events that occurred during that two-month period, must be dismissed. First, plaintiffs have failed to state a claim for reimbursement of any expenditures that they may have made for Robert's placement at Four Winds during September and October 1994. Not only is the complaint devoid of any allegation that plaintiffs incurred any

---

2. Instead, it argues that pursuant to N.Y.Fam.Ct. Act § 415, it may obtain an order requiring Robert's parents to bear a portion of that expense, to the extent that they are able.

3. Plaintiffs' claims against Pine Plains are before this court in the context of an appeal from the SRO's determination that a residential placement

is not necessary for Robert to receive an appropriate education and that plaintiffs are not entitled to reimbursement from Pine Plains for any expenses incurred because of Robert's placement at Devereux. Therefore, plaintiffs have exhausted their administrative remedies with respect to these claims. *See* 20 U.S.C. § 1415(e)–(f).

such expenses, but plaintiffs also acknowledge that Robert's placement at Four Winds was for psychiatric, rather than educational, purposes. *See* Complaint, at ¶ 24. Therefore, Pine Plains was required to pay only Robert's educational expenses, and plaintiffs do not allege that Pine Plains failed to do so.

█ Second, plaintiffs' claims for review of the SRO's decision concerning the appropriateness of the non-residential special education placement proposed in Robert's 1994–95 IEP must be dismissed as moot. Plaintiffs seek a declaratory judgment that the SRO erred by failing to rule that a residential placement was appropriate for Robert for the 1994–95 school year. A decision on that issue will not, however, affect Robert's placement at Devereux. The 1994–95 academic year has been completed, and, in any event, Pine Plains is no longer responsible for developing and implementing Robert's IEP.

The single case that plaintiffs cite in support of their contention that these claims are not moot is readily distinguishable. In *Mason v. Schenectady City Sch. Dist.*, 879 F.Supp. 215, 219 (N.D.N.Y.1993), the court held that the parent's IDEA claims were not moot because she sought compensatory damages and compensatory education to remedy the school district's alleged past violations of the IDEA. In this case, plaintiffs do not seek either compensatory damages or compensatory education for Pine Plains's alleged failure to develop an appropriate IEP for September and October 1994, *see* Plaintiffs' Memorandum of Law, at 19, presumably because they do not allege that they suffered any damages during this period. Therefore, to the extent that plaintiffs' claims for review of the SRO's decision concerning the appropriateness of the 1994–95 IEP are based on events that occurred prior to Robert's placement at Devereux, they are dismissed as moot.

In sum, we grant Pine Plains's motion to dismiss with respect to all of the claims asserted against it.

### B. DSS's Motion to Dismiss

Plaintiffs have asserted that DSS violated the IDEA by charging plaintiffs for the services provided at Devereux and that DSS has violated 42 U.S.C. § 1983 by depriving plaintiffs of their rights under the IDEA and § 504 of the Rehabilitation Act.

█ First, DSS contends that the claims asserted against it should be dismissed because the IDEA does not apply to it. This argument need not detain us long. The regulations implementing the IDEA provide that:

[t]he State plan [which must be submitted to the federal government in order to obtain federal funding] is submitted by the State education agency on behalf of the State as a whole. Therefore, the provisions of this part apply to *all* political subdivisions of the State that are involved in the education of children with disabilities. These would include: (1) The State educational agency; (2) Local educational agencies and intermediate educational units; (3) Other State agencies and schools . . .; and (4) State correctional facilities.

34 C.F.R. § 300.2(b) (emphasis added). While local social services departments are not explicitly mentioned among the listed agencies, that list is not exclusive. DSS is clearly a political subdivision of New York State that is "involved" in providing education to disabled children under N.Y.Educ. Law §§ 4001–4006. Hence, DSS is subject to the requirements of the IDEA.

█ Next, DSS argues that plaintiffs' claims against it should be dismissed because it has fulfilled its obligations under New York law by paying Robert's tuition expenses and that portion of his maintenance not covered by his parents under the Family Court's support order. The issue presented by plaintiffs' claims is not, however, whether DSS has complied with the relevant New York statutory provisions. It is whether the Family Court's support order, issued in response to a petition by DSS, violates the IDEA. The short answer to this question, which is sufficient for our present purposes, is that *requiring Robert's parents to contribute to his maintenance violates the IDEA's guarantee of a free appropriate public education if the Family Court placed Robert at Devereux because that placement was necessary for him to benefit educationally. See*

*Jenkins v. Florida,* 1984–85 E.H.L.R. Dec. 556:471, 556:476 (M.D.Fla.1985).

 DSS and plaintiffs flatly disagree about whether Robert's educational needs were the basis for his placement at Devereux. *Compare* DSS's Memorandum of Law, at 9, *with* Plaintiffs' Memorandum of Law, at 16. DSS contends that the Family Court placed Robert at Devereux as a result of a juvenile delinquency proceeding that was initiated because of his fire-setting. They assert that this action was obviously entirely unrelated to his educational needs. DSS may, in the final analysis, be correct. On a motion to dismiss, however, we must assume the truth of the allegations in the complaint, and plaintiffs have alleged that they initiated the process by which the Family Court placed Robert at Devereux because he would receive an appropriate education there. *See* Complaint, at ¶¶ 29–30. These allegations, taken as true, are sufficient to support a reasonable inference in plaintiffs' favor that the Family Court placed Robert at Devereux for educational reasons, in which case his placement must be free to his parents.

 DSS next contends that if plaintiffs find the support payment set by the Family Court overly burdensome, they could have and should have appealed that order through the appropriate state court channels instead of challenging it here. DSS's argument misses the point: the issues that plaintiffs present for our consideration are whether the Family Court placed Robert at Devereux for educational purposes and, if so, whether the Family Court may order plaintiffs to make maintenance payments of any amount, burdensome or not. Plaintiffs' decision not to pursue the appropriate procedures for seeking an adjustment of the support payment amount has no bearing on their claim that the Family Court's order that they make support payments toward Robert's placement at Devereux violates the IDEA.

DSS is correct, however, that plaintiffs have not alleged that they have exhausted their administrative remedies with respect to these issues, as they ordinarily must do before seeking relief from this court under the IDEA, § 504 of the Rehabilitation Act or 42 U.S.C. § 1983. *See* 20 U.S.C. § 1415(e)–(f);

*Hope v. Cortines,* 872 F.Supp. 14, 19 (E.D.N.Y.), *aff'd,* 69 F.3d 687 (2d Cir.1995). DSS raises this issue in one sentence in its Reply Affirmation and does not specify the administrative procedures available to plaintiffs. *See* Affirmation of Thomas P. DelPizzo, dated Feb. 23, 1996, at ¶ 9. Presumably, DSS is referring to the procedures mandated by N.Y.Educ.Law § 4005(2)(b), which provides that a parent who is not satisfied with the educational evaluation or the IEP that a private residential facility has developed for his child may invoke the same review mechanism available to parents challenging the decision of the CSE of a local school district, *i.e.,* a hearing by an IHO followed by an appeal to an SRO. *See* N.Y.Educ.Law § 4404. Administrative review proceedings conducted pursuant to N.Y.Educ.Law § 4404 routinely address issues concerning the funding of a child's placement. Assuming that the procedures available under N.Y.Educ. Law § 4005(2)(b) would similarly enable plaintiffs to obtain administrative review of decisions affecting the funding for Robert's placement at Devereux, we excuse plaintiffs' failure to exhaust those remedies.

 As the Second Circuit has stated, exhaustion is not an inflexible requirement. *See Mrs. W,* 832 F.2d at 756. For instance, exhaustion is not a prerequisite to filing suit when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Heldman v. Sobol,* 962 F.2d 148, 159 n. 11 (2d Cir.1992); *Mrs. W,* 832 F.2d at 756. The rationale behind this exception is that while the administrative hearing officers have the authority to enforce established regulations, policies and procedures, they generally do not have the authority to set new policies or to alter existing ones. Therefore, requiring a parent to exhaust his administrative remedies when he is challenging a generally applicable policy or procedure would be futile.

Plaintiffs have alleged that DSS "relies upon the Family Court Act (Sec. 415) to sue parents for the costs of all placements; the exact amount is dependent upon the parents' ability to pay and is pursued by the County regardless of the child's disability and eligi-

bility for special education." Complaint, at ¶ 31. They have therefore alleged the existence of a generally applicable policy or practice. If, as plaintiffs allege, DSS implements that policy by seeking support orders from the Family Court for disabled children whose placements are necessary to provide them with appropriate educations, that policy violates the IDEA. Accordingly, we excuse plaintiffs' failure to exhaust their administrative remedies as to their claims against DSS.

■ Finally, DSS argues that we should dismiss plaintiffs' claims pursuant to Fed. R.Civ.P. 19 and 12(b)(7) for failure to join the New York State Department of Social Services ("NYDSS"), whose presence, DSS asserts, is necessary for the just adjudication of plaintiffs' claims against DSS. The first step in deciding such a motion is to determine, under the standards set forth in Fed.R.Civ.P. 19(a), whether NYDSS should be joined. The burden is on DSS to establish that NYDSS is a necessary party. *See* 7 Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 1609, at 129–30 (1986). Rule 19(a) provides in pertinent part:

> A person ... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded to those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest. ...

■ Plaintiffs have not asserted any factual allegations or made any legal claims against NYDSS. According to the relevant New York statutes, DSS is the agency that is financially responsible for Robert's tuition and, at the least, that portion of his maintenance that his parents cannot pay. Furthermore, DSS obtained the Family Court order that currently requires Robert's parents to pay approximately $1200/month toward his maintenance. Plaintiffs seek an order enjoining DSS from enforcing the support order and reimbursement for support payments that they have already made.

Plaintiffs can clearly obtain complete relief without the joinder of NYDSS.

DSS has also failed to show that NYDSS has an interest in the subject of this action. DSS contends only that NYDSS is "intricately involved with" DSS, SED and other agencies "in the areas of budgeting and reimbursement for expenditures [made by DSS] in carrying out its duties." DSS's Memorandum of Law, at 12. As plaintiffs point out, however, under this reasoning any number of state and federal agencies that are involved in funding the education of disabled children would be necessary parties. We do not believe that is the case.

Finally, DSS contends that if we grant plaintiffs the relief that they seek, our decision will potentially have significant ramifications for other local social services departments. We have, of course, no information about the policies followed by other local social services departments with respect to support payments for disabled children that the Family Court places in private residential facilities. It is possible that if we find that the support order at issue in this case violates the IDEA, our decision could have implications for the policies and budgets of any local social services department that currently follows a policy similar to DSS's. The existence of those concerns does not, however, make the joinder of NYDSS necessary for a just adjudication of this particular case.

Accordingly, DSS's motion to dismiss the plaintiffs' claims against it is denied.

## C. SED's Motion to Dismiss

Plaintiffs assert that SED violated the IDEA by failing to ensure that Robert's placement at Devereux would be free to his parents and that SED has violated 42 U.S.C. § 1983 by depriving plaintiffs of their rights under the IDEA and § 504 of the Rehabilitation Act.

Under 20 U.S.C. § 1413(a)(4) and its implementing regulations, SED must "ensure that a child with a disability who is placed in or referred to a private school or facility by a public agency ... [i]s provided special education and related services ... [i]n conformance with an IEP ... [a]t no cost to the

parents...." 34 C.F.R. § 300.401. Furthermore, under 20 U.S.C. § 1412(6), SED "shall be responsible for assuring that the requirements of [the IDEA] are carried out...." Relying on these provisions, *see* Complaint, at ¶ 49, plaintiffs assert that by failing to prevent DSS from obtaining a support order requiring them to contribute to Robert's maintenance at Devereux, SED has failed to fulfill these duties.

▓▓▓▓ SED has moved to dismiss on the ground that plaintiffs have failed to make specific factual allegations sufficient to state a claim against SED. Defendants contend, correctly, that claims based only on vague, conclusory or general allegations of wrongdoing cannot survive a motion to dismiss. *See Yamen v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 909 F.Supp. 207, 211 (S.D.N.Y. 1996) (citing *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir.1981)). We do not agree, however, that plaintiffs' allegations that SED violated the IDEA fall into that category. Plaintiffs have alleged that "it is common knowledge in New York" that DSS relies on N.Y.Fam.Ct.Act § 415 to sue the parents of disabled children for support payments without regard to the children's eligibility for special education. *See* Complaint, at ¶ 31. If DSS does indeed follow a policy of obtaining support orders for children placed in private residential facilities by the Family Court for educational purposes, SED has failed to fulfill its duty to ensure that those children receive an appropriate education at no cost to their parents. Accordingly, SED's motion to dismiss plaintiffs' IDEA claim is denied.

▓▓▓ Plaintiffs' claim against SED under 42 U.S.C. § 1983 must be dismissed, however. SED, as a political subdivision of New York state, is not a "person" within the meaning of 42 U.S.C. § 1983, and therefore that statute cannot serve as the basis for an action against it. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). This claim is therefore dismissed for lack of subject matter jurisdiction.

## II. Motion for Preliminary Injunction

Plaintiffs have moved for a preliminary injunction against defendants that would enable Robert to remain at Devereux at no cost to his parents while these proceedings are pending. The heart of plaintiffs' motion is, therefore, a request for a preliminary injunction prohibiting DSS from enforcing the Family Court's support order. SED is not implicated in plaintiffs' request for preliminary relief, and plaintiffs' motion is denied to the extent that it seeks a preliminary injunction against SED.

▓▓▓ Plaintiffs argue that they are entitled to a preliminary injunction against DSS under the "stay put" provision of the IDEA, which dictates that a child shall remain in his or her then current educational placement during the pendency of review proceedings, unless the parents and the agency agree otherwise.[4] *See* 20 U.S.C. § 1415(e)(3). Courts have held that if this provision applies, it affords an "automatic" preliminary injunction restoring the status quo, and plaintiffs need not satisfy the usual standard for obtaining preliminary injunctive relief. *See Cronin v. Bd. of Educ. of East Ramapo Cent. Sch. Dist.*, 689 F.Supp. 197, 202 (S.D.N.Y.1988) (citing *Honig v. Doe*, 484 U.S. 305, 326–27, 108 S.Ct. 592, 605–06, 98 L.Ed.2d 686 (1988)). Hence, the threshold question is whether the Family Court's issuance of the support order constituted a change in Robert's placement that triggered the protection of the stay put provision. *See id.*

▓▓▓ Plaintiffs argue that DSS changed Robert's placement without their consent

---

4. The stay put provision is contained in 20 U.S.C. § 1415. *See also* N.Y.Educ.Law § 4404(4). This section outlines the procedures that the state must implement for reviewing the decisions made by local education agencies in order to comply with the IDEA. Therefore, section 1415(e)(3) does not specifically refer to agencies like DSS. Nevertheless, the IDEA applies to all political subdivisions of the state that are involved in educating disabled children, *see* 34 C.F.R. § 300.2(b), and children in private schools are guaranteed all of the rights that are available under the IDEA to children in public schools. *See* 34 C.F.R. § 300.401(b). Therefore, we see no reason why Family Court placements like Robert's should not be subject to the stay put provision under appropriate circumstances. *Cf.* N.Y.Educ.Law § 4005(4).

**784**

when it obtained the support order and began collecting payments from plaintiffs. We are not persuaded. First, plaintiffs have alleged absolutely no changes in Robert's program at Devereux as a result of the issuance of the support order. The only change that plaintiffs have alleged is that they became obligated to pay a portion of his maintenance expenses. From the moment that the Family Court placed Robert at Devereux, however, the possibility existed that plaintiffs could be required to contribute to his support. Plaintiffs themselves have asserted that DSS routinely seeks support orders under N.Y.Fam.Ct.Act § 415 in cases like theirs.[5] *See* Complaint, at ¶ 31. The fact that a support order has actually been entered does not constitute a change in Robert's placement.

Therefore, plaintiffs are not entitled to a preliminary injunction under the stay put provision.

 Plaintiffs also argue that they are entitled to a preliminary injunction under the usual standard. At the present time, we do not have sufficient information before us to determine either plaintiffs' likelihood of success on the merits of their claims against DSS or the probability that plaintiffs will suffer irreparable harm in the absence of a preliminary injunction. Specifically, we believe that a hearing would be beneficial to explore the issues of whether Robert's placement at Devereux was for educational purposes and whether the support payments imposed on his parents are so burdensome as to create a probability of irreparable harm. *See Borey v. National Union Fire Insur. Co.*, 934 F.2d 30, 34 (2d Cir.1991) ("Monetary loss alone will generally not amount to irreparable harm [absent] evidence of damage that cannot be rectified by financial compensation." (internal quotation omitted)). Plaintiffs are therefore directed to contact chambers upon receipt of this decision to schedule a hearing date on their motion for a preliminary injunction against DSS.

**CONCLUSION**

For the foregoing reasons, defendant Pine Plains's motion to dismiss is granted. Defendant DSS's motion to dismiss is denied. Defendant SED's motion to dismiss is granted as to plaintiffs' § 1983 claim and denied as to plaintiffs' IDEA claim. Plaintiffs' motion for a preliminary injunction against SED is denied. We do not decide plaintiffs' motion for a preliminary injunction against defendant DSS, and plaintiffs are hereby directed to contact chambers to schedule a hearing on this motion.

SO ORDERED.

5. Plaintiffs were well aware of this aspect of the Family Court placement. They have alleged that because of their knowledge of DSS's policy, they requested that the IHO order Pine Plains to reimburse them for any expenses that they might incur as a result of Robert's placement at Devereux. *See* Complaint, at ¶ 31.