**James and Barbara KING, Parents of Robert K., a Disabled Student, Plaintiffs,**

v.

**PINE PLAINS CENTRAL SCHOOL DISTRICT, Dutchess County Department of Social Services and the State Education Department, Defendants.**

No. 95 Civ. 10365 (WCC).

United States District Court,
S.D. New York.

April 24, 1996.

Family Advocates, Inc., New Paltz, New York, for Plaintiffs (Rosalee Charpentier, of counsel).

Ian G. MacDonald, County Attorney, Poughkeepsie, New York, for Defendant Dutchess County Department of Social Ser-

vices (Keith P. Byron, Sr. Asst. County Attorney, of counsel).

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs James and Barbara King, the parents of a disabled child, filed this action on December 8, 1995, against defendants Dutchess County Department of Social Services ("DSS") and the New York State Education Department ("SED"). Plaintiffs assert claims under various provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and 42 U.S.C. § 1983. Plaintiffs have made a motion seeking a preliminary injunction. In an opinion and order, 918 F.Supp. 772 dated March 6, 1996, we denied plaintiffs' motion with respect to SED because the relief that plaintiffs seek is available from DSS alone.[1] On April 3, 1996, we held a hearing on plaintiffs' motion. Plaintiffs and DSS submitted post-hearing memoranda shortly thereafter. For the reasons stated hereinafter, the motion is denied.

## BACKGROUND

The basic framework of the IDEA and the factual allegations set forth in plaintiffs' complaint are summarized at length in our March 6 opinion and order. We presume familiarity with that decision and describe here only the facts and circumstances pertinent to a ruling on the motion currently before us. These facts are drawn from the papers submitted by the parties and from the uncontroverted testimony of the witnesses at the preliminary injunction hearing.

Plaintiffs are the adoptive parents of a 16–year–old child, Robert, who has been diagnosed as multiply disabled. Robert has a long history of learning disabilities and emotional and behavioral problems. He has been in special education programs throughout his school career and has been hospitalized three times for psychiatric treatment. In 1993, when Robert moved into the Pine Plains Central School District ("Pine Plains"), his parents sought to obtain a placement for him in a residential school. Pine Plains took the position that residential placement was not necessary and implemented an individualized education plan ("IEP") for the 1993–94 school year under which Robert attended special education classes at a day school in the district.

Robert has admitted that on June 5, 1994, he set fire to a neighbor's cars and took a bottle of whiskey from the neighbor's garage. As a result of this incident, Robert was charged as a juvenile with committing conduct that would constitute several crimes. The county attorney filed a petition in Dutchess County Family Court on July 27, 1994, seeking to have Robert adjudicated a juvenile delinquent and placed in the custody of DSS. On September 27, 1994, Robert pled guilty to petit larceny. On November 1, 1994, the Family Court declared Robert a juvenile delinquent and placed him in the custody of DSS for twelve months. On November 16, 1995, the Family Court signed an order extending that period for another twelve months.

Meanwhile, on June 9, 1994, Robert was admitted to Four Winds Psychiatric Hospital ("Four Winds") for treatment. At some point before the November 1, 1994, Family Court hearing, the assistant county attorney handling Robert's delinquency proceeding contacted Ann Woolsey, a DSS case manager, and sought her help in finding a suitable placement for Robert. Woolsey testified that usually the case manager does not seek a placement for a child until after the Family Court places the child in DSS's custody but that Robert's case was unusual. She stated that the assistant county attorney was concerned that it would be difficult to find a placement for Robert because of his psychiatric history and fire-setting problems. *See* Transcript of Hearing, dated Apr. 3, 1996 [hereinafter, "Tr. ____"], at 47–48. Woolsey testified that she sought placement at ten institutions. The only one willing to accept Robert was The Devereux School (Tr. 50), a

---

1. In that decision, we also granted the motion to dismiss made by a third defendant, Pine Plains Central School District.

private residential school that specializes in teaching multiply disabled children. Robert left Four Winds and entered Devereux on November 4, 1994.[2] He has remained there since.

After Robert arrived at Devereux, his treatment committee began developing an IEP and treatment plan for him. On January 17, 1995, it adopted an IEP for the 1994–95 school year. On November 8, 1995, it adopted an IEP for the 1995–96 school year. Robert's mother testified that she received notice from Devereux of her rights under the IDEA with respect to the development of these IEPs. (Tr. 35) DSS did not send plaintiffs any notice of their rights under the IDEA (Tr. 35, 58), although Woolsey testified that she was in contact with Robert's parents throughout the process of finding a placement for him. (Tr. 60)

DSS currently pays Robert's tuition and maintenance expenses at Devereux, which are between six and seven thousand dollars per month. (Tr. 51–52) Pine Plains, as Robert's school district of residence, reimburses DSS for a portion of Robert's tuition expenses pursuant to a formula established by New York state law. See Tr. 51–52; N.Y.Educ.L. § 4004(2). In August 1995, DSS sought and obtained an order from the Family Court under N.Y.Fam.Ct.Act § 415 directing plaintiffs to pay a total of about $1200 per month toward the cost of Robert's maintenance fees. (Tr. 36) That amount, which is divided among Robert's mother, father and stepmother, was set after a hearing before the Family Court and is garnished from their wages. (Tr. 36, 38) Plaintiffs seek a preliminary injunction barring DSS from collecting these payments while this action is pending.

For the reasons set forth below, plaintiffs' motion is denied.

## DISCUSSION

 As we held in our March 6, 1996 decision, the "stay put" provision of the IDEA, 20 U.S.C. § 1415(e)(3), is not applicable in this case. To prevail on their motion, therefore, plaintiffs must satisfy the usual standard for granting a preliminary injunction. See Antkowiak v. Ambach, 621 F.Supp. 975, 980 (W.D.N.Y.1985). Plaintiffs "must demonstrate both (1) irreparable harm in the absence of the requested relief, and (2) either (a) a likelihood that [they] will succeed on the merits of the action, or (b) a sufficiently serious question going to the merits combined with a balance of hardships tipping decidedly in [their] favor . . . ." Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc., 973 F.2d 1033, 1038 (2d Cir.1992).

## I. Merits

As we begin our discussion, it is important to note what is currently at stake in this case. DSS and Robert's parents agree that Devereux is a suitable placement for him. His parents are satisfied with his current program. Indeed, they have sought for some time to obtain a placement for him at a residential school like Devereux. The Family Court has extended the order placing Robert in the custody of DSS until November 1996, and Woolsey testified that she is not aware of any plans on DSS's part to change Robert's placement. (Tr. 54) Therefore, at this point, this case is not about whether Robert should remain at Devereux. Instead, the heart of this case is whether that placement should be free to his parents or whether the Family Court may order them to contribute to Robert's support while he is enrolled at Devereux.

As we explained in our March 6 opinion, once the Family Court placed Robert with DSS, DSS became responsible for the cost of his placement. Under N.Y.Fam.Ct.Act § 415, the Family Court may order the parents of a minor child placed in DSS's custody to contribute a "fair and reasonable sum" toward the child's support. Woolsey testified that DSS pursues support payments from all

---

**2.** The complaint alleges that "[O]n October 29, 1994, with the parents' consent and direction, the Family Court through [DSS] directed placement at the Devereux School . . . ." Complaint, at ¶ 30. Hence, in our March 6 decision on the defendants' motions to dismiss, this court assumed that the Family Court placed Robert at Devereux. The somewhat different version of these events that is recounted in the text has now emerged.

parents, whether or not their children are disabled. (Tr. 63)

The IDEA, however, guarantees disabled children a "free appropriate public education." 20 U.S.C. § 1400(c); *Mrs. W v. Tirozzi*, 832 F.2d 748, 750 (2d Cir.1987). Requiring Robert's parents to contribute to his maintenance violates the IDEA's guarantee of a free appropriate public education if Robert's placement at Devereux is necessary for him to benefit educationally. *See Parks v. Pavkovic*, 753 F.2d 1397, 1404–06 (7th Cir.), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3529, 87 L.Ed.2d 653 *and* 474 U.S. 918, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985); *Jenkins v. Florida*, 1984–85 E.H.L.R.Dec. 556:471, 556:476 (M.D.Fla.1985), *rev'd on other grounds*, 815 F.2d 629 (11th Cir.1987).

Plaintiffs contend that Robert's placement at Devereux is necessary for educational purposes and that it should be provided at no cost to them. DSS contends that it placed Robert at Devereux because he was adjudicated to be a danger to his community and because Devereux was the only suitable facility that would accept him. It asserts that placement at Devereux is not necessary for Robert to make educational progress and that it may therefore collect support payments from his parents.

Plaintiffs have demonstrated, at the least, the existence of a serious question as to the merits of their claim. Plaintiffs' expert witness, who also supervises Robert's clinical treatment at Devereux, testified that residential placement is essential to Robert's educational progress because he needs a highly structured environment and 24–hour supervision in order to benefit from instruction. (Tr. 13–19) Robert's current IEP, prepared by staff members at Devereux, requires residential placement. *See* Plaintiffs' Exhibit 3. Moreover, there is some indication that DSS took Robert's educational needs into consideration in seeking a placement. Woolsey testified that in placing Robert, DSS sought a "suitable" placement, which she defined as one that "could provide for all of Robert's needs." (Tr. 55) Woolsey also stated that DSS's analysis of Robert's needs was based in part on an IEP prepared by Four Winds that recommended residential placement for Robert. (Tr. 56) This evidence would tend to support a finding in plaintiffs' favor.

It is possible, however, that DSS will be able to establish at trial that placement in a private residential school is not necessary for Robert to make educational progress. Woolsey also testified that Robert's parents told her that Pine Plains recommended special education in day school for Robert. She explained, however, that because of the need to comply with the Family Court's order for Robert's physical placement in a facility where he would receive treatment and supervision, Pine Plains' recommendation was not a viable option. (Tr. 57) The evidence before us at this time does not clearly indicate whether DSS attempted to place Robert in a residential facility that would have permitted him to attend special education classes at a public day school. (Tr. 57–58) It may be that DSS will be able to demonstrate that such a placement would be appropriate for Robert's educational needs but that, practically speaking, Devereux was the only option available. If that is the case, DSS could prevail on the merits.

Nonetheless, plaintiffs have demonstrated, at the least, the existence of a sufficiently serious question for litigation.

II. Balance of Hardships

The balance of hardships tips decidedly in plaintiffs' favor. DSS has not even attempted to argue that it would suffer hardship if we grant the preliminary relief that plaintiffs seek. Plaintiffs, on the other hand, argue that the financial burden imposed on them by the Family Court's support order is substantial. Robert's mother is responsible for paying approximately $800 per month. (Tr. 37) She testified that her take-home pay is about $2200 per month, after the support payment is deducted. (Tr. 66) Her monthly mortgage payment is $958 (Tr. 43), leaving approximately $1250 for all other expenses. She does not support any other children. (Tr. 40) Robert's father is responsible for paying approximately $330 per month, plus Robert's monthly medical bills of about $50. He makes $28,000 per year, presumably before taxes. Robert's stepmother is currently on disability following a car accident and

must contribute $50 per month from her disability payments of $700 per month. Robert's father and stepmother are supporting two other children. *See* Affidavit of Lori S. Schreier, dated Feb. 16, 1996, at ¶ 27. Clearly, the hardships imposed on plaintiffs by the Family Court's support order substantially outweigh any slight harm that DSS might suffer if the support payments were suspended pending the outcome of this litigation.

### III. Irreparable Harm

Plaintiffs contend that they will be irreparably harmed if they are forced to continue to make support payments during the pendency of this action. It is axiomatic, however, that "when a party can be fully compensated for financial loss by a monetary judgment, there is simply no compelling reason why ... a preliminary injunction should be granted." *Borey v. National Union Fire Insur. Co.*, 934 F.2d 30, 34 (2d Cir.1991). Furthermore, plaintiffs must establish that in the absence of a preliminary injunction, irreparable harm is not merely possible but likely. *See id.*

Plaintiffs have failed to present evidence that they are likely to suffer harm that could not be fully compensated, if they are successful on the merits of this action, by an award of damages reimbursing them for the support payments that they have made. Robert's mother indicated at the preliminary injunction hearing that she fears that she may have to sell her house if the payments are not suspended. (Tr. 43) The evidence about her financial situation does not persuade us that this result is likely. After her mortgage payment, Robert's mother has approximately $1250 per month for other expenses, which do not include supporting any other children. While this is certainly not a large income, she has not established that she is likely to suffer irreparable harm. The financial situation of Robert's father and stepmother seems more precarious, but the affidavit setting forth that information did not include a statement of the likely consequences of continued payments. *See* Schreier Aff., at ¶ 27. Robert's father and his stepmother did not testify at the preliminary injunction hearing.

Moreover, we note that N.Y.Fam.Ct. Act § 415 directs the Family Court to set a support payment amount that is "fair and reasonable." We feel confident in stating that such a standard does not encompass the entry of a support order that would drive the plaintiffs into bankruptcy or otherwise cause them irreparable financial harm. Before entering the support order, the Family Court held a hearing, at which the plaintiffs appeared and were represented by counsel (Tr. 38), expressly to examine the issue of what a fair and reasonable payment amount would be under their circumstances. We believe that the Family Court's determination is entitled to some deference from this court. It may be that we will determine that the Family Court may not order any support payments at all in this case because the IDEA mandates that Robert's placement be free to his parents. That does not mean, however, that in the interim, we should entirely disregard the Family Court's evaluation of the parents' financial situation.

Plaintiffs argue that they do not have to prove that they will suffer irreparable harm, financial or otherwise, in order to prevail. According to plaintiffs, irreparable harm is presumed because they are contending that their federal statutory rights under the IDEA have been violated by DSS's actions. We disagree. It is clear that the mere assertion that a plaintiff's federal statutory rights have been violated does not create a presumption of irreparable harm. Otherwise, the courts would presume irreparable harm in deciding every preliminary injunction motion made in cases brought under federal statutes. That is certainly not the law.

In support of their argument, plaintiffs cite a handful of cases in which courts have held that irreparable harm may be presumed where the nonmovants had failed to comply with a federal statutory requirement. The application of this doctrine is limited, however, to "exceptional cases," which are "comparatively rare." *Essex County Preservation Ass'n v. Campbell*, 536 F.2d 956, 962 (1st Cir.1976). Plaintiffs have not persuaded us that this case, which is quite dissimilar on

its facts from any of the decisions that they cite, fits that description. *Compare, e.g., Lathan v. Volpe,* 455 F.2d 1111, 1116–17 (9th Cir.1971) (ordering district court to grant preliminary injunction halting acquisition of land for highway project until highway administrators complied with certain requirements of Federal–Aid Highway Acts and National Environmental Policy Act); *Community Nutrition Instit. v. Butz,* 420 F.Supp. 751, 757 (D.D.C.1976) (preliminarily enjoining Dept. of Agriculture regulation permitting sale of machine-deboned meat where agency failed to comply with notice and participation requirement for rulemaking under Administrative Procedure Act). To the contrary, at least one court in this circuit has indicated that a plaintiff must demonstrate irreparable harm before the court may grant a preliminary injunction relieving the parent of the cost of a placement for which he would otherwise be responsible pending the outcome of litigation. *See Antkowiak,* 621 F.Supp. at 980.

The Second Circuit has stated that "perhaps the single most important prerequisite for the issuance of a preliminary injunction" is a demonstration that irreparable harm is likely if it is not granted. *Borey,* 934 F.2d at 34 (internal quotation omitted). Plaintiffs have failed to demonstrate that they are likely to suffer irreparable harm if we do not grant the preliminary injunction that they seek. Therefore, plaintiffs' motion is denied. To minimize the burden on plaintiffs, this case will be set for trial on the merits as soon as possible.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction is denied.

SO ORDERED.