In re CALDOR, INC.—NY, The Caldor Corporation, Caldor, Inc.—CT, et al., Debtors.

The CALDOR CORPORATION, Plaintiff,

v.

S PLAZA ASSOCIATES, L.P., Defendant.

Bankruptcy No. 95 B 44080 JLG.
Adversary No. 97/8832A.

United States Bankruptcy Court,
S.D. New York.

Jan. 29, 1998.

Reisman, Peirez, Reisman & Calica, L.L.P., Garden City, NY, for Defendant.

Camhy Karlinsky & Stein, L.L.P., New York City, for Plaintiff.

### MEMORANDUM DECISION ON MOTION OF S PLAZA ASSOCIATES, L.P. TO COMPEL IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE

JAMES L. GARRITY, Jr., Bankruptcy Judge.

The Caldor Corporation ("Caldor") and S Plaza Associates, L.P. ("S Plaza") are party to an unexpired lease of non-residential real property (defined below as the "Lease") in a shopping center located in Garden City, New York (the "Shopping Center"). The Lease requires Caldor, as tenant, to pay a portion of the Shopping Center's real property taxes as additional rent (the "Additional Rent"). Caldor contends that S Plaza, and its predecessor, as landlords, overbilled it for Additional Rent. It commenced this adversary proceeding to recover the Additional Rent that it allegedly overpaid prepetition. The parties have cross-moved for summary judgment and the motions are *sub judice*. S Plaza moves for an order pursuant to §§ 365(d)(3) and 503 of the Bankruptcy Code directing Caldor to resume immediate payment of Additional Rent now due or to become due under the Lease. Caldor objects to the motion. We grant it.

### Facts

Except as noted, the relevant facts are not in dispute. On May 9, 1986, Caldor, Inc. and Garden City Shopping Associates, as predecessors-in-interest to Caldor and S Plaza, respectively, entered into a lease (as amended, the "Lease") of a portion of the Shopping Center. In or about April 1990, Caldor, Inc. assigned its interest in the Lease to Caldor, which has occupied the leased premises since on or about October 15, 1990. Later, Shopping Associates surrendered a deed-in-lieu of foreclosure for the Shopping Center to Marine Midland Bank. In December 1994, S Plaza purchased the Shopping Center from the bank, and pursuant to an Assignment and Assumption of Lease dated December 7, 1994, S Plaza assumed all of Shopping Associates' rights and obligations under the Lease.

The Lease requires Caldor to pay a percentage of the real estate taxes assessed against the Shopping Center as Additional Rent and contains a formula for calculating the percentage. Caldor contends that S Plaza and Shopping Associates have miscalculated, and overbilled it for, the Additional Rent since 1991 because they did not adhere to the formula in the Lease. It argues that it did not discover S Plaza's alleged error until 1997, and that it unknowingly overpaid the Additional Rent due under the Lease during the period from 1991 through 1996. It seeks to recover those alleged overpayments in this adversary proceeding. S Plaza denies that Caldor is entitled to any relief. The parties'

cross-motions for summary judgment are *sub judice*.

In connection with prevailing real estate practice, the Town of Hempstead, New York, as the relevant taxing authority, bills S Plaza semi-annually for school taxes due with respect to the Shopping Center. For the 1997/1998 school year, the first and second half taxes are due on October 1, 1997 and April 1, 1998, respectively, but are payable without penalty until November 10, 1997 and May 10, 1998, respectively. Weingarten Properties Inc. ("Weingarten") is S Plaza's managing agent at the Shopping Center. In that capacity, Weingarten received the tax bills for the 1997/1998 school year. In an October 29, 1997 letter, Weingarten forwarded copies of the bills to Caldor and an invoice for $133,386.37, representing Caldor's share of the first half tax liability. Caldor refused to pay any portion of that bill. In follow-up telephone calls, personnel in Caldor's Real Estate Department advised Weingarten that Mr. Daniel Kirtland, Caldor's Vice President for Real Estate, had directed Caldor to freeze all of its tax payments to S Plaza. By letter dated December 10, 1997, Kirtland advised Weingarten that the October 29 letter incorrectly calculated Caldor's tax liability and that, in substance, Weingarten should recalculate it according to the formula Caldor is advocating in this adversary proceeding, and resubmit the invoice to Caldor. He did not promise that Caldor would pay that tax liability. Rather, he advised that the "entire issue of future real estate tax payments can only be addressed comprehensively upon resolution of the pending litigation between our companies with respect to the past tax billings for this location."

By letter dated December 29, 1997, S Plaza's counsel proposed to his counterpart that, at a minimum, Caldor pay the undisputed portion of the Additional Taxes "without prejudice" until such time that we rule on the summary judgment motions. In response, Caldor agreed to put the Additional Rent "into escrow". S Plaza rejected that offer.

S Plaza contends that the foregoing makes it clear that Caldor will not pay the next installment of taxes for the 1997/1998 school year ($140,000), which becomes due on February 10, 1998, and the next tax installment of $133,386 due on April 1, 1998. It maintains that unless we order Caldor pursuant to §§ 365(d)(3) and 503 of the Bankruptcy Code to honor its obligations under the Lease by paying its Additional Rent as an administrative expense claim as it is invoiced, S Plaza will be put at risk of defaulting on its tax and mortgage obligations on the Shopping Center.

### Discussion

We have subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C .J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B) and (*O*).

In relevant part, § 365(d)(3) directs a chapter 11 debtor to timely perform all of its obligations under an unexpired lease of nonresidential real property, until it either assumes or rejects the lease. *See* 11 U.S.C. § 365(d)(3). In the event that the tenant disputes its obligation to make any payment due under the Lease, ¶ 29 of the Lease gives the tenant the "right" to make such disputed payment "under protest". Lease ¶ 29. In addition, ¶ 34 of the Lease directs any party disputing its obligation to make a payment or otherwise perform to do so "under protest" pending the outcome of any arbitration initiated by either party to resolve the dispute. *Id.* ¶ 34. No provision of the Lease expressly authorizes the tenant to withhold payment of any amount due in the event of a dispute. Thus, S Plaza contends that pursuant to the Bankruptcy Code and the plain language of the Lease, Caldor cannot withhold any portion of the rent payable under the Lease.

Caldor opposes the motion, contending in its papers that

(1) the Lease does not require it to pay the disputed amounts;

(2) pursuant to § 553 of the Bankruptcy Code, it can setoff or recoup the Additional Rent against the overpayments wrongfully retained by S Plaza; and

(3) S Plaza is really seeking injunctive relief and it has not met its burden for a preliminary injunction

During argument of the motion, Caldor conceded that the Lease mandates that it pay the Additional Rent, as billed by S Plaza, notwithstanding its assertions that S Plaza is overcharging it. It also conceded that even assuming, *arguendo*, that it has a claim against S Plaza for prepetition overpayments of Additional Rent, it cannot offset or recoup the overpayments pursuant to § 553 of the Bankruptcy Code.

■ Caldor contends that because S Plaza is seeking identical relief in its summary judgment motion, we should treat this motion as one for a preliminary injunction, and deny it because S Plaza has not shown (i) a likelihood of success on the merits of its summary judgment motion; (ii) irreparable injury absent the granting of preliminary relief; and (iii) a balancing of equities in its favor. *See, e.g., Molloy v. Metropolitan Transp. Auth.*, 94 F.3d 808, 811 (2d Cir.1996) (setting forth standards for granting preliminary injunction). It argues that we must deny S Plaza's request for a preliminary injunction because S Plaza cannot establish irreparable harm since monetary damages are available to compensate it for its loss, and because it has offered to put the Additional Rent into escrow. *See, e.g., Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir.1995) (where monetary relief is adequate, party not entitled to preliminary injunction because there is no irreparable harm); *accord Borey v. Nat'l Union Fire Insur. Co. of Pittsburgh, Pa.*, 934 F.2d 30, 34 (2d Cir.1991); *King v. Pine Plains Central School District*, 923 F.Supp. 541, 546 (S.D.N.Y.1996).

In its complaint, Caldor seeks only to recover the alleged pre-petition overpayments of Additional Rent. Although S Plaza mentioned in its summary judgment motion that it is entitled to receive Additional Rent payments prospectively, it did not assert a claim for them. Thus, the standards governing the issuance of preliminary injunction are not implicated herein at all.

■ Caldor also argues that this motion is procedurally improper because S Plaza cannot move to compel payment of postpetition rent under §§ 503 and 365(d)(3), and in any event, that based on the equities of the case we should not do so. Relying upon *In re Wingspread Corp.*, 116 B.R. 915 (Bankr. S.D.N.Y.1990), Caldor suggests that it need not pay post-petition rent because S Plaza has engaged in an act which warrants reduction, denial or deferral of payment.

In *Wingspread*, Gulf & Western ("G & W") had guaranteed the debtors' performance under certain leases of non-residential property. When the debtors failed to meet certain obligations under the leases after filing for bankruptcy, G & W paid their debts. In turn, G & W sought immediate payment of its alleged administrative priority claims. It argued that each lessor would have been entitled to immediate payment of its claim under § 365(d)(3) of the Bankruptcy Code, and that pursuant to § 509 of the Bankruptcy Code, it was subrogated to those rights. 116 B.R. at 918.

The bankruptcy trustee opposed G & W's motion. Among his arguments in opposition was that § 365(d)(3) was subject to § 503(b)(1) of the Bankruptcy Code, and that G & W could not recover its post-petition payment on those leases except to the extent that it established that the payments actually benefitted the estate. *Id.* at 924–25. Since the debtors either vacated the subject premises or used them solely to liquidate during the post-petition period, the trustee argued that G & W's payments did not qualify as administrative expenses. *Id.* at 925. The court rejected the trustee's interpretation of § 365(d)(3) and held that § 365(d)(3) alone requires a debtor to pay the rent reserved under a lease for the 60 days following the order for relief, as an administrative claim where the lease is ultimately rejected, irrespective of whether the payments required under the lease meet the usual requirements for administrative status. *Id.* However, the court noted that those payments are unconditionally due, "unless the landlord has engaged in some act which warrants reduction, denial or deferral of payment". *Id.*

*Wingspread* is clearly inapposite. Moreover, Caldor does not allege, yet alone demonstrate, wrongdoing on S Plaza's part. In

substance, the Lease mandates that where, like here, there is a dispute regarding the payment of rent, Caldor must pay it, although it can do so under "protest". As noted, Caldor concedes that it cannot recoup or setoff alleged rent overpayments against Additional Rent charges. Thus there is no basis in equity, or otherwise, for declining to enforce § 365(d)(3). *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"); *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) (section 105 does not "authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity"); *In re Rashid,* 97 B.R. 610, 615 (W.D.Okla.1989) ("While the Bankruptcy Court is a court of equity, its equitable powers to avoid the express language of statutes are limited"); *see also* 2 COLLIER ON BANKRUPTCY ¶ 105.01[2] at 105–6–7 (15th ed. rev.1997) (discussing and citing cases).

At the hearing on this motion, Caldor argued for the first time that we should exercise our equitable powers to excuse compliance with § 365(d)(3) because S Plaza is not in a position to respond to any judgment ultimately entered against it requiring disgorgement of alleged overpayments of Additional Rent. Although inability to respond to a judgment is a basis for finding irreparable harm in the context of a request for injunctive relief, *see Borey,* 934 F.2d at 34; *Sperry, Int'l Trade, Inc. v. Gov't of Israel,* 670 F.2d 8, 12 (2d Cir.1982), such a finding requires the party seeking the injunction to show that the monetary loss likely will force the defendant into bankruptcy, *see Borey,* 934 F.2d at 34; *Sperry,* 670 F.2d at 12, or that the financial condition of the defendant is so precarious that it would be unable to respond to a money judgment subsequently obtained. *See, e.g., Hughes Network Sys., Inc. v. InterDigital Communications Corp.,* 17 F.3d 691, 694 (4th Cir.1994) (stating that "even where a harm could be remedied by money damages at judgment," irreparable harm may be found where " '[d]amages may be unobtaina-

ble from the defendant because he may become insolvent before a final judgment can be entered an collected' ") (citation omitted). Caldor has not introduced any evidence of S Plaza's purported inability to do so other than S Plaza's statements that Caldor's continued non-payment will prejudice S Plaza because the Shopping Center is encumbered by a mortgage, and the cash flow generated by the Lease is utilized to service that debt. Even if our equitable powers could be invoked to excuse literal compliance with the statute, we would decline to do so on these facts.

We also disagree with Caldor's restrictive reading of §§ 365(d)(3) and 503 of the Bankruptcy Code. As relevant, the statute unequivocally mandates that a debtor in possession timely perform all of the obligations of a debtor under an unexpired lease of nonresidential real property until it assumes or rejects the lease. 11 U.S.C. § 365(d)(3). To be sure, as Caldor contends, the statute does not "prescribe any result for violation of its mandate". *In re Westview 74th Street Drug Corp.,* 59 B.R. 747, 752 (Bankr.S.D.N.Y.1986). However, in *Westview,* the court rejected the argument that a debtor's breach of its obligations under § 365(d)(3) precludes it from assuming an unexpired lease of nonresidential real property under § 365(d)(4). *Id.; see also South Street Seaport Limited Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.),* 94 F.3d 755, 761 (2d Cir.1996) (remaining current on rent postpetition is not a condition precedent to extending debtor's time to assume or reject a lease under § 365(d)(4); it is merely one of several factors court must consider). Those cases are inapposite because S Plaza is attempting to compel the payment of postpetition rent. It does not contend that Caldor's failure to pay that rent divests it of its rights under § 365(d)(4) to assume the lease.

We reject Caldor's contention that S Plaza's request for immediate payment of an administrative expense is somehow procedurally defective. S Plaza properly brought this matter on by motion. Even assuming, *arguendo,* that it did not, any resulting error on S Plaza's part is harmless. Caldor, as

well as the equity and creditors' committees appointed herein, received adequate and appropriate notice of the relief S Plaza seeks and had a full opportunity to be heard.

### Conclusion

We grant S Plaza's motion for an order directing Caldor to pay the Additional Rent billed under the Lease.

SETTLE ORDER.